LEEPER, GRAVES & CO. *et al.* v. FIRST NAT. BANK OF HOBART.

No. 601.    Opinion Filed July 12, 1910.

(110 Pac. 655.)

1.  REPLEVIN—Bonds—Objections. The obligors on a replevin bond given by the plaintiff who has by virtue thereof received and retained the property are estopped from questioning its validity on the ground of formal or technical defects.

2.  REPLEVIN—Bond—Validity—Time of Signing. The fact that the undertaking in replevin provided for by section 5689, Comp. Laws Okla. 1909, was endorsed as filed at a date subsequent to the issuance of the writ, does not affect its validity where the same was in fact signed at a prior date, and the writ itself recites that before its issuance an undertaking was filed.

3.  REPLEVIN—Judgment Against Plaintiff—Return of Property—Liability for Damages. In an action of replevin, where there is an alternative judgment rendered against plaintiff for the return of the property taken or its value, it is the duty of plaintiff to promptly and in good faith tender all of the same in as good condition as received and a failure to do so will render

his sureties liable on their undertaking for the full amount that defendant may be damaged thereby.

(a) In such a case, however, where plaintiff within a reasonable time makes a good faith tender of a substantial part of the property taken, it is the duty of the defendant to accept the same and recoup on plaintiff's bond for any damages suffered.

4. **REPLEVIN—Judgment Against Plaintiff—Tender of Property— Duties of Defendant.** Plaintiff took from defendant in an action of replevin eight steel bridges.. The trial resulted in a judgment against plaintiff for the return thereof or their value. Within a reasonable time plaintiff in good faith tendered defendant all of the property shown to have been taken with the exception of a small fraction thereof. It was not shown that plaintiff willfully withheld the part not tendered or that the same could not be readily supplied in the open market. Defendant rejected the tender, and the court rendered judgment for the value of the whole property. Held error; it being the duty of defendant to accept the property tendered and recoup damages on the bond.

(Syllabus by the Court.)

*Error from District Court, Kiowa County; Frank E. Gillette, Judge.*

Action by the First National Bank of Hobart against Leeper, Graves & Co., and others. Judgment for plaintiff, and defendants bring error. Affirmed in part and remanded.

*E. E. Blake,* for plaintiffs in error.—On validity of replevin bond: *Owen v. Togue,* 29 N. E. 784; *Henrie v. Buck,* 18 Kan. 228; *Edwards v. Ellis,* 27 Kan. 344; *Hayes v. Clason,* 20 Kan. 120. On sufficiency of tender: 1 Cobbey on Replevin, secs. 1318, 1350; 7 Wait on Actions and Defenses, 598, 599; *Frey v. Drahos* (Neb.) 7 N. W. 454; *Gans v. Woolfolk,* 2 Mont. 458; *Larabee v. Cook* (Kan.) .61 Pac. 815; *Washington Ice Company v. Webster,* 125 U. S. 426.

*L. M. Keys* and *Ledbetter, Stuart & Bell,* for defendant in error.—On validity of replevin bond: Shinn on Replevin, secs. 821-824; *Cady v. Eggleston,* 11 Mass. 282; *Bank v. Brecheisen* (Kan.) 70 Pac. 895; *Hooks v. Fenner* (Colo.) 32 Pac. 614. On sufficiency of tender: *Machine Works v. Breidenstein* (Kan.) 31

Pac. 703; *Binkley v. Dewall* (Kan.) 58 Pac. 1028; *Irvin v. Smith* (Wis.) 31 N. W. 909; *Bennelbaum v. Atkinson* (Ky.) 52 S. W. 828; *Eickhoff v. Eikenbary* (Neb.) 72 N. W. 308; *Pauls v. Mundine* (Tex. Civ. App.) 85 S. W. 43.

DUNN, C. J. This case presents error from the district court of Kiowa county, and is an action to recover on an undertaking filed by the plaintiffs in error in an action of replevin. The facts out of which it grows are substantially as follows: On the 18th day of April, 1904, the First National Bank of Hobart, Okla., was a pledgee in possession of eight steel bridges of the value of $4,855, held by it as a security for an indebtedness of $6,000. Upon the day stated Leeper, Graves & Co., a corporation, began an action to secure possession of this property, and a bond was executed and filed in the office of the clerk of the district court, signed by the plaintiff and D. S. Dill, J. G. Leeper, and John W. Graves. A writ of replevin was issued, and the property involved was taken from the possession of the bank and delivered to the plaintiff. On the trial of this action judgment was rendered in favor of the bank for the return of the property if it could be had, and if the same could not be returned, then for the sum of $4,855, the value thereof, together with the costs of the action. Thereafter and on the 25th day of October, 1905, the bank, having neither received the property nor been paid the amount of the judgment rendered, brought this action in the same county to recover on the bond filed by plaintiff in the replevin action. Answers were filed by all the parties defendant in which the rendition of the judgment above mentioned was admitted with the averment that, within a reasonable time after the rendition of the said judgment the defendant Leeper, Graves & Co. paid all the costs of said action, and tendered to plaintiff the personal property involved, and that plaintiff then and there refused to accept it. The reply was a general denial, and the action was tried to the court, which, after making special findings of fact and conclusions of law, rendered judgment in favor of the bank and against the defendants in the sum of $4,855, with interest at the rate of

7 per cent. per annum from the 28th day of April, 1904. To reverse this judgment, proceedings in error have been begun in this court.

It is first insisted on behalf of defendants in this action that no recovery could be had on the bond by reason of the fact that it appears not to have been filed in the office of the clerk of the district court until after the order of delivery had been issued by the clerk. On the question thus raised by counsel, the facts found by the trial court in its second and third findings of fact are apparently supported by the record, and they are as follows:

"Second. At the time of filing the petition a replevin bond signed by Leeper, Graves & Co. and D. S. Dill was presented to the clerk of the court and subscribed and acknowledged, and thereupon a writ of replevin issued for the property sought to be recovered, which writ was never served, and was returned to the court unserved on April 26, 1904. In the meantime and on the 25th day of April, 1904, J. G. Leeper and John W. Graves qualified as bondsmen on said replevin bond before the clerk of the district court of Oklahoma county, and upon oath stated in their qualification, each for himself, that he was the person who signed the bond in the case of Leeper, Graves & Co., Plaintiff, v. First National Bank, case No. 376. Afterwards and on the 27th day of April, 1904, a second order of replevin was issued in said cause upon which order the property sought to be recovered was on the 28th day of April, 1904, taken from the possession of the First National Bank by the sheriff, who, after holding the same for 24 hours, delivered the property into the possession of one R. W. Shepherd, attorney for Leeper, Graves & Co., as shown by the sheriff's return."

"Third. The court finds written at the foot of the replevin bond the following words: 'Subscribed and acknowledged before me this 28th day of April, 1904, by J. G. Leeper and John W. Graves, D. B. Shear, Clerk Third District, by W. H. Clark, Dep.' The court further finds said bond indorsed, 'Presented, approved and filed, this 30th day of April, 1904,' and the court makes note of the fact that the figures '30th' are not the original figures indicating the day of the month upon which the bond was filed, for it clearly appears from the paper itself that the figures originally written there have been erased and the figures '30th,' subsequently written. No oral testimony in the trial of the cause

was addressed to the facts stated in the third and second findings of fact, touching the execution and delivery of said bond, except that which appears from the indorsements upon said bond, but the court concludes from the files that said replevin bond was executed by Leeper, Graves & Co. and D. S. Dill April 18, 1904, and afterwards by J. G. Leeper and John W. Graves on the 25th day of April, 1904, before the clerk of the district court of Oklahoma county, as shown by their affidavits in qualifying as such bondsmen, and that the order of replevin was not issued until they did so sign and execute said bond; that afterwards said bond was sent back to the said clerk of Oklahoma county for an acknowledgment upon the instrument itself, and was then marked as having been acknowledged on the 28th day of April, instead of the 25th, as sworn to before the same clerk, and, having afterwards been returned to the district clerk at Hobart, the filemark was changed to April 30th."

The objection which counsel make, as is seen, does not in any way affect the merits of the bond given or change in any particular the liability which the parties thereto sought to incur. The bond was executed and all things necessary to be done by the parties were performed prior to the issuance of the replevin order. The end which was sought to be attained on their part was to secure the property and this was accomplished, and the objection which is here made is of a technical character, which, after the benefits of the bond have been received, cannot be looked upon with favor. Wells on Replevin, § 436; Cobbey on Replevin, § 1288; *Cook, etc., v. Bank of Kentucky,* 28 Ky. 163; *Central Nat. Bank of Topeka et al. v. Brecheisen,* 65 Kan. 807, 70 Pac. 895; *Cady v. Eggleston et al.,* 11 Mass. 282; 24 Am. & Eng. Ency. Law, pp. 533, 534, and cases therein cited. The rule as declared in Wells on Replevin, *supra,* is as follows:

"The general rule is well settled that the plaintiff in replevin who has had the property delivered to him on his writ cannot dispute the validity of the bond on any mere technical grounds or for any failure to comply with the statutory process as to the manner of its execution. The rule in all such cases seems to be based on the idea that the party who has obtained delivery of the property by virtue of his suit, and by filing his bond, has had all the benefit which would accrue if the bond had been

formal, and is estopped from questioning its validity on the ground of formal or technical defects."

In the case of *Cady v. Eggleston, supra,* it was contended that the bond was void because not completed until after the writ was served, which is substantially the contention of counsel for the company in this case. Speaking to this point, Chief Justice Parker, who prepared the opinion for the court, said:

"It has been contended by the counsel for the defendants that the bond is void and of no effect, because, as the writ of replevin is by the terms of it effectual only upon the giving of the bond by the plaintiff in the suit with sureties, and as no such bond was given until many days after the writ was served, the whole process was void. * * * Although the defendant in replevin might by plea in abatement or by motion have avoided the process, yet we are of opinion that the plaintiff in replevin cannot himself set up this defense to defeat his own bond. He has availed himself of it, so far as to have a trial upon the question of property; and it would be strange imbecility in the law to permit him to set up his own fraud or negligence to discharge him from the proper consequences of the suit. He suffered his name to be made use of to take out of the custody of the law property which did not belong to him, permitted the action to proceed to trial, and claimed the property until judgment was rendered against him."

Furthermore, section 5689 of the Compiled Laws of Oklahoma of 1909 provides that the order shall not be issued by the clerk until there has been executed in his office the undertaking required. In keeping with this statute the order issued recited that Leeper, Graves & Co., had filed "its affidavit and undertaking as required by law in the office of the clerk of said court in order to obtain an order for the immediate delivery of said goods and chattels." The rule seems to be that under such a statute, where the undertaking is indorsed as having been filed at a date subsequent to the issuance of the writ, that this irregularity is immaterial where it was in fact executed at a prior date, and the writ itself recites that before its issuance an undertaking was filed. *Hook et al. v Fenner,* 18 Colo. 283, 32 Pac. 614, 36 Am. St. Rep. 277; *Baker et al. v. Pope,* 49 Ala. 415. We therefore conclude that

the bond filed by the parties in this case on which the possession of the property was secured having served at their instance the purpose for which it was intended, is not rendered void by reason of any irregularity in the time of its execution or filing.

The next proposition presented by counsel for the company is one of greater difficulty. The bond given is provided for by section 5689 of the statutes, *supra*, and binds the obligors that the plaintiff shall duly prosecute the action and pay all costs and damages which may be awarded against it, and, if the property be delivered to it, that it will return the same to the defendant if return be adjudged. On the trial of the replevin action, judgment was rendered for a return of the property, and, in the event the return thereof could not be had, then for the sum of $4,855 in money, the value thereof. This judgment was rendered on the 21st day of September, 1905. On the 19th of October following an agent for the company went to Hobart and called upon the cashier of the bank for the purpose of making a tender of the bridges. Although there appears to be some slight discrepancy in the testimony, we think it shows substantially that a tender was made and that it was rejected on the part of the bank for two reasons: First, that the same was not made within a reasonable time; and, second, that it was desired on the part of the bank to check up the different parts of the property to ascertain whether or not it was all there. The court in reference to this matter finds as follows:

"On the 19th of October, 1905, Leeper, Graves & Co., notified the bank that they would return the property, and for that purpose had a part of it loaded on wagons and hauled to the bank. The officer of the bank in charge at the time refused to receive it or any portion of it until the several bridges and their several parts could be invoiced, and the fact determined, as to whether or not the complete structures were there. Two of the bridges involved were at that time at Snyder, a distance of 20 or 25 miles away, and another at the town of Gotebo, some 10 miles distant. The bridges were checked over and parts of them found to be missing. No tender of the missing parts was made."

Upon this finding, the court came to the following conclusions of law:

"Second. That it was necessary for the defendants herein, Leeper, Graves & Co., in order to escape liability upon their replevin bond, to tender a return of the complete structures or to have obligated themselves to have made the structures complete by supplying any necessary part found to be missing, and, having failed to do so, they are liable upon their bond in the amount of the plaintiff's interest therein, which is found to be $4,855. Third. That the defendants Leeper, Graves & Co. took and received possession of said property under and by force of the bond sued on in this action, and are therefore, together with their sureties, liable to the plaintiff in the amount above stated."

That the tender was made within a reasonable time we think there can be no doubt. Nor was the bank acting beyond its rights when on being tendered the property it asked either for time to consult with its attorneys or to check over the property tendered to ascertain what it was receiving. Hunt on Tender, § 418. The property involved in this action consisted of eight steel bridges, five of which were in the town of Hobart, at which place was located the bank. The other three were in two other towns located in the same county. On the ground of the sufficiency of a tender of bulky articles such as are here involved, the rule seems to be as stated by the Supreme Court of Oregon in the case of *Capital Lumbering Co. v. Learned et. al.,* 36 Or. 544, 59 Pac. 454, 78 Am. St. Rep. 792, that:

"When a return of personal property is adjudged in an action for its recovery, it is the duty of the plaintiff, if he has secured possession thereof pending the litigation, and would escape the penalty of his undertaking, to take active measures to redeliver it to the defendant, within a reasonable time, in the same condition as when taken. Cobbey, Repl. § 1182; *Parker v. Simonds,* 8 Metc. (Mass.) 205; *Berry v. Hoeffner,* 56 Me. 170. This rule imposes upon the plaintiff in such case the duty of seeking the defendant in the action, and tendering the property to him, if it be readily capable of manual delivery; but, if such a course is difficult by reason of its bulky character, an offer to redeliver it to the defendant is all that the law enjoins. Thus, in an action for the possession of a steam engine, boiler, engine

house, office, and hay scales, it was adjudged that the property be returned to the sheriff, who had levied thereon, but had not removed it from the place where it was then situated. The plaintiff offered to return it at the place where it was seized, but the sheriff refused to accept it, and thereafter commenced an action to recover its value, whereupon he was perpetually enjoined from enforcing the alternative judgment; the court holding that the property was of such a cumbrous nature as to render its removal inconvenient, and that the plaintiff had done all that the law required of him in such cases. *Frey v. Drahos,* 10 Neb. 594, 7 N. W. 319. So, too, in *Gans v. Woolfolk,* 2 Mont. 458, a carpet containing 600 yards, tacked to a floor, and not removed by the sheriff who seized it, was adjudged to be returned to him, and it was held that the carpet was so bulky as to render it necessary that the parties entitled to it should designate some convenient place to receive it, and, in the absence of such designation, the plaintiff could select a proper place for its delivery. Mr. Justice Blake, speaking for the court, in rendering the decision says: 'The carpet was a bulky and cumbersome article, and the respondents were not required to tender it, like money, to the appellants wherever found. They were obliged to deliver the property at some particular place. If the appellants neglected or refused to appoint the place the respondents had the right to select it, with a reasonable regard for the convenience of the appellants, and there deliver the goods.' "

So that the company did all that was required of it in tendering the return of the bridges in this case as it did. On an offer being made to return or deliver personal property sufficient to constitute a valid tender, where the party who makes the tender is acting within his legal rights, it is the duty of the one to whom the tender is made to accept and receive the property, and whether it is refused or accepted under such a condition the title thereto vests at once in the obligee and the obligation to the extent of the duty is thereby performed. Hunt on Tender, § 391; *Games v. Manning,* 2 G. Greene (Iowa) 251. And this seems to be the rule obtaining where property is sought to be returned in accordance with a judgment in replevin. *Schrader v. Wolflin,* 21 Ind. 238. The tender made by the company was finally rejected by the bank immediately after checking the bridges over

and ascertaining that certain parts were missing, and an action was begun within a few days on the bond. The court in its second conclusion finds, as we have seen, that, in order to escape liability upon the bond, it was necessary for the company to tender a return of the complete structures, or to have obligated itself to make them complete by supplying any necessary parts found to be missing. The return of the sheriff shows that under the company's action he received eight steel bridges, describing and specifying them only by setting out their lengths and dimensions. On the trial of this action the expert who checked the bridges over made a detailed, itemized invoice of each of the bridges. It appears that two of the bridges were 40, two of them 50, two of them 60, one 70, and one 80 feet in length. Neither the bridges nor the different portions thereof were itemized or valued on the trial. The value of the entire eight was fixed at one lump sum.

An expert called by the bank for the purpose of checking the bridges at the time of the tender, after detailing in full all of the different separate items consisting of beams, posts, nuts, hangers, bolts, pins, etc., going to make up each of them, then gave the following testimony:

"Q. What would you say, Mr. Hamson, as to the material that you have testified to finding there being the necessary parts to constitute a one 80-foot span 16-foot roadway bridge, one 70-foot span 16-foot roadway bridge, two 60-foot span 16-foot roadway bridges, two 50-foot span 16-foot roadway bridges, two 40-foot span 16-foot roadway bridges? A. I would say it was incomplete. Q. Go ahead, and in your own way state what parts were missing that would be necessary to make these five complete bridges. A. There was a part of one counterrod—one end of it was missing. It would be of no use whatever that way. Q. What is a counterrod used for? A. It is to help support the bridge so that it will not sag under a load. Q. How many of such counterrods are essential to a span? A. Well, they can't get along with less than four, and the number depends on the size of the span and the material used. Might use four in making one bridge, and in a large and stronger bridge they would have to use eight of the same sized material. Q. Were there any other such counterrods missing? A. No, sir. Q. What else was missing of the parts necessary to make

up these five bridges? ، A. There were fifty-two nuts short  Q. Where was that?  A. Hobart.  Q. Anything else?  A. There were two floor beams short.  Q. These floor beams, what are they used for?  A. They run underneath the bridge from one truss to another to hold up the floor.  The entire floor rests upon them.  Q. What else short?  A. I believe that is all I can figure out on Hobart.  Q. Did you find these missing parts either at Snyder or Gotebo.  A. There were, I think, some at Snyder.  Q. What did you find at Snyder that was missing at Hobart?  A. I do not think I found anything at Snyder that was missing at Hobart. Q. Did you find any of these parts at Gotebo?  A. There was supposed to be two bridges at Snyder.  Q. What did you find missing there, if anything?  A. I found shortage of eight pins. Q. What were those pins used for?  A.  They were used to connect the bridges at  the  panel points.  Q. I will get you to explain what the  panel  is  in  the  construction  of a bridge.  A. A panel is a division of a bridge.  All spans are divided into a certain number of parts, equal parts, and one of these parts is a panel, and, where it meets another panel, it must be connected.  They are connected by bars lapping over pins passing through the eyes.  Q. Was there anything else missing at Snyder?  A. There was one post shoe missing.  Q. What is a post shoe?  A. A post shoe is a metal base that one corner of the bridge rests upon.  Q. There would be four post shoes to each span?  A. Yes, sir.  Q. And, in the absence of one of these post shoes, could the bridge be put in place?  A. No, sir.  Q. What else was missing at Snyder?  A. Two diagonal rods.  Q. Explain what the diagonal rods are used for?  A. They run from the point in the principal part of the bridge to a point in the lower part of the bridge diagonally opposite.  Their vocation is that of a brace.  Q. Is there anything else?  A. Three lateral rods short. Q. What is the purpose of a lateral rod?  A. A lateral rod is a brace that runs under the bridge from one panel point to another diagonally opposite, and they work in pairs, and there should always be an even number.  Their office is to keep the sides of the bridge from swaying.  Q. Anything else?  A. Eight chord bars.  Q. Explain what a chord bar is?  A. A lower part of a bridge extending from one bar to another is called a chord, that is made of an equal number of divisions and the parts that go to make up that division are called bars.  They have an eye in each end.  Q. What is the office of a chord bar?  A. Well, it is simply

to hold the bridge together. It would not exist without it. It is one of the main parts. Q. Was there anything else missing at Snyder? A. There was two sections of top chord missing. Q. What is a top chord? A. It is the second principal member and works in conjunction with the lower chord. It is the highest part of the bridge in the horizontal direction. I believe that is all I discovered wrong at Snyder. Q. Was there a sufficient supply of nuts at Snyder? A. Nine nuts missing at Snyder. Q. Now, in your examination, did you find any of these missing parts either at Gotebo or Hobart? A. I found two pieces top chord at Hobart short at Snyder. Q. How many pieces were missing? A. Two. Q. That is to say there were two extra pieces of top chord at Hobart? A. Yes, sir. Q. What was the shortage at Gotebo, if any? A. There was short four lateral rods and no nuts for the lateral rods that were there; that is, four nuts short; 24 cotters or keys. Q. What are they? A. They are spring metal cut to pass through the hole in the pin to hold it in place after pin has been placed through the eye Q. Is there anything else missing at Gotebo? A. That is all that was short there I believe. Q. Did you find any of those bridges complete, so that it could be put in place if it was desired to be used? A. No, sir; I did not. Q. You found them all lacking in some essential part? A. Well, they were all lacking in some part. Q. How many parts of them did you find lacking in essential or necessary parts? A. I found three."

- No contention is made that the company did not receive these missing articles in the replevin action, nor was there any evidence offered to show that they were withheld in bad faith, nor were not such that either of the parties could go into the open market and readily purchase and replace, as they would any other item of personal property. And, if the rule obtains that a plaintiff who in an action of replevin under a judgment requiring him to return the property taken may return less than the whole when part is lost, then to our minds the bond which is given in such a case would be responsive to the requirement suggested by the court in its second conclusion, wherein it is held that the company should have obligated itself to have made the structures complete by supplying any necessary part found to be missing. On the question as to whether a plaintiff against whom a judgment has been rendered in replevin may return a portion of the property, and receive

credit therefor, being liable for the unreturned portion on his bond, or whether he must tender all or none, the authorities are not entirely harmonious. The following cases hold that a partial return with a monetary liability for the unreturned portion is not permissible, and that a plaintiff under such a state of facts must return all or pay the judgment for the entire amount of the property received. *Whetmore v. Rupe,* 65 Cal. 237, 3 Pac. 851; *Pauls et al. v. Mundine,* 37 Tex. Civ. App. 601, 85 S. W. 43; *Kingsley v. Sauer,* 17 Misc. Rep. 544, 41 N. Y. Supp. 248; *Stevens v. Tuite et al.,* 104 Mass. 328. However, by far the greater number of authorities, and in our judgment with the better reasoning, depending somewhat on the particular facts in each case, support the rule that in an action of replevin where the plaintiff secures possession of the property and on the trial a judgment is rendered requiring its return or the value thereof in case a return cannot be had, it is the duty of plaintiff in good faith to tender in as good condition as received all of the same within a reasonable time, and it is the duty of defendant to accept such a tender and receive the property or a substantial part thereof and recoup any damages suffered on the replevin bond. See Wells on Replevin, § 422, and authorities therein cited; Shinn on Replevin, § 679; Cobbey on Replevin, § 1389; *Washington Ice Co. et al. v. Webster,* 125 U. S. 426, 8 Sup. Ct. 947, 31 L. Ed. 799; *Larabee v. Cook,* 8 Kan. App. 776, 61 Pac. 815; *Harts et al. v. Wendell, etc.,* 26 Ill. App. 274; *Edwin et al. v. Cox,* 61 Ill. App. 567; *Allen v. Fox,* 51 N. Y. 562, 10 Am. Rep. 641; *Yelton et al. v. Slinkard et al.,* 85 Ind. 190; *Archer v. Long,* 47 S. C. 556, 25 S. E. 84; *Reavis v. Horner,* 11 Neb. 479, 9 N. W. 643; *Johnston et al. v. Mason,* 64 N. J. Law, 258, 45 Atl. 618; *Pickett v. Bridges,* 10 Humph. (Tenn.) 171; *Pabst's Brewing Co. v. Rapid Safety Filter Co.,* 54 Misc. Rep. 305, 105 N. Y. Supp. 962. The underlying reason for the foregoing rule grows out of the fact that whatever right of ownership or tenure which is held in property either real or personal is in consequence of and subject to the provisions of the law. All rights relating to property by which we hold, own, pos-

sess, or use it are just such as the law gives us. A party claiming the right of ownership in and of immediate possession to personal property, and seeking to enforce such right, may bring replevin or detinue, or, if he elects, he may abandon the property to his adversary and sue in trover. In trover, however, it is not the property or its possession which he seeks, but damages sufficient to cover its value while in replevin or detinue it is primarily the property which he is pursuing, and he takes a judgment for its value only in the absence of ability to secure the specific articles claimed. Hence the distinctive difference between the two proceedings helpful in determining the rule in either is that in the one it is money in lieu of property which is sought, and in the other it is possession of specific personal property, and not money which is the object of the action. The foregoing thought is expressed by the Court of Appeals of New York in the case of *Allen v. Fox, supra,* in the following language:

"In the action of trover, the plaintiff does not seek to recover his property, but its value as a substitute for the property. He abandons the property to the defendant, preferring to pursue him for its value. He makes a kind of forced sale of it, without any expectation or intention of retaking it. Hence in such cases he can be expected at once to go into the market and supply himself with the same property at its market value if he desires it. But in the action of replevin the plaintiff seeks to recover the property, and is in all stages of the case to final judgment in pursuit of that, and not its value. And during the whole time the defendant may have the possession and the use (if it can be used) of his property. At the termination of the suit it is not optional with him to take the property or its value. If the defendant has the property, and will permit him to take it, he is obliged to take it."

A party in good faith claiming personal property in the possession of another has a right to submit his claims to a court for judgment, and this without imminent danger of being compelled to buy or pay for the property if it is afterward held he is not entitled to it. This is one of the burdens with which our tenure of personal property is incumbered by the law. We hold

it subject to the exercise by others of this right, and replevin is primarily an action for property, and not money.

In the case at bar, as the parts of the different bridges which were not tendered constituted but a small fraction of the entire amount of the property taken, and there was no showing that the same could not be readily procured in the open market, or were within plaintiff's control, we can see no reason why a party in such a case should not be required to accept the great bulk of the property involved and recoup on the bond given for such as was missing. Counsel for the bank in their brief ask if a wagon be replevied, and plaintiff be required to restore, could he tender the tail-gate, and require its acceptance? To this we will say that we think not, but should the wagon be tendered entire with the exception of the tail-gate, which it was not within the power of plaintiff to restore—that is, was lost and not wilfully withheld—we believe that its acceptance would be required with an allowance of damages therefor. So it will be seen the conclusion to which we have come is that by the bond given the company had obligated itself to make the structures tendered complete as they were when they received them, or, to the same end, make the obligees whole for all loss or damages suffered. In the case of *Barse Live Stock Commission Co. v. McKinster et al.*, 10 Okla. 708, 64 Pac. 14, the trial court committed error in its instructions as to the amount of damages recoverable in an action of replevin brought for certain live stock. In the consideration of the case the Supreme Court of the Territory of Oklahoma said:

"The judgment as to the ownership of the animals is affirmed, and reversed as to the amount of damages assessed, and the cause is remanded to the district court with directions to set aside the judgment and verdict as to the value of the cattle, and resubmit the question of value and damages to a jury, unless a jury is waived, and try said issue in accordance with the views expressed in this opinion.."

This practice commends itself to us, and in the case at bar the judgment of the trial court is affirmed in all things, with the

exceptions of the second and third conclusions of law, and the cause is remanded to the trial court to enable plaintiffs to establish and recover damages in accordance with the rule laid down in this opinion.

All the Justices concur.