## SEIDENBACH'S v. A. E. LITTLE CO.

No. 17237. Opinion Filed Oct. 11, 1927.

Rehearing Denied Nov. 22, 1927.

(Syllabus.)

1. **Corporations—Replevin—Waiver of Demand—Right of Action in Domesticated Foreign Corporation to Recover Property Loaned Before Domestication.**

Where, in an action of replevin, the evidence and admissions of counsel show that plaintiff, an undomesticated foreign corporation, was doing a mercantile business in Oklahoma, owned certain store fixtures, shelving, carpet, etc., and, desiring to remove its place of business, loaned such equipment as a favor to a neighboring merchant for a short time, without consideration paid or to be paid therefor, and subsequent thereto the corporation properly domesticated within the state and some months thereafter brought suit for such equipment without any precedent legal demand for the goods, the answer of the defendant borrower, denying plaintiff's right of possession and property, and setting up that the goods were taken over at a time when the plaintiff was not authorized to do business in Oklahoma, and therefore the action could not be maintained, is in itself a waiver of any precedent demand for the goods, and in such case, if the evidence shows that the borrower had not theretofore claimed such goods as his own or denied the plaintiff's right thereto, then plaintiff's cause of action arose out of the defendant's wrongful assertion of title to the plaintiff's goods, and since the same is subsequent to plaintiff's domestication, the plaintiff is entitled to assert his right of action in tort against the defendant.

2. **Same—Judgment—Erroneous Allowance for Usable Value.**

Where an undomesticated foreign corporation is doing a mercantile business in the state of Oklahoma, and lends, without consideration paid or to be paid, a part of its equipment for a short time to a neighboring merchant, and thereafter the foreign corporation is properly domesticated within the state and later brings an action of replevin for its goods so loaned, and a judgment therefor is properly rendered upon sufficient evidence, it is error for the court to allow in addition thereto a judgment for the rental or usable value thereof upon the theory either that there was an express or an implied contract by the borrower to pay the reasonable rental value thereof.

3. **Bailment—Right to Replevy Loaned Goods Based on Denial of Title and not on Loan Contract.**

Where the owner of personal property lends the same without consideration paid or to be paid to a borrower, who, for the first time, denies the plaintiff's right of property or possession when suit is brought to recover the same. the right of the owner to sue in replevin for his goods arises and is maintainable out of the wrongful denial of plaintiff's right of property and possession, which constitutes a tort and is not dependent upon the legal enforceability of the loan contract under which the defendant received possession of the goods.

Commissioners' Opinion. Division No. 2.

Error from District Court, Tulsa County; W B. Williams, Judge.

Action in replevin by A. E. Little Company, a corporation, against Seidenbach's, a corporation, to recover possession of certain shoe store fixtures or their value. Judgment for plaintiff, and defendant appeals. Modified and affirmed.

Samuel A. Boorstin, for plaintiff in error.

Aby & Tucker, for defendant in error.

BENNETT, C. A civil action brought in the district court of Tulsa county, Okla., February 21, 1924, by A. E. Little Company, a corporation, against Seidenbach's, a corporation, and J. L. Seidenbach, defendants. This action was tried by the court without the intervention of a jury and a recovery was had by A. E. Little Company against Seidenbach's, a corporation, and suit dismissed as to J. L. Seidenbach, individually, from which judgment an appeal was taken to this court for review. The parties will be referred to as plaintiff and defendant as they were designated in the court below.

The petition is in the usual form in replevin and alleges, among other things, that the plaintiff is the owner of certain goods and chattels described as the equipment of a shoe store and of the aggregate value of $2,570.75; that the plaintiff is the owner of the same and that the defendant detains them.

Plaintiff gave bond and sued out his writ of replevin for the personal property sued for, and within the time allowed by law the defendant executed and filed his redelivery bond and the possession of said property was forthwith returned to the defendant.

Defendant filed a general demurrer to the petition, which was overruled, and later filed its answer consisting of: First, a general denial; and, second, an allegation in substance that plaintiff is a foreign corporation not organized for religious or charitable purposes, and has not filed in the office of the Secretary of State of the state of Oklahoma certified copy of its articles of incorporation as required by law; has not appointed an agent for service; and has not in anywise domesticated in Oklahoma; that the plaintiff is a foreign corporation and was doing business at the time set forth in plaintiff's petition in violation of law; and that the contract out of which the alleged cause of action arose was made within the state of Oklahoma, while the plaintiff was doing business in violation of law; and that by reason thereof the plaintiff should not be allowed to assert any rights under the contract. There was a reply on the part of plaintiff setting out a general denial.

There are set out in the record statements of counsel which indicate that in 1922 there was situate at the corner of Fifth and Main streets, in the city of Tulsa and in the Mayo building, a place of business known as "Prager's Paris Fashion Shop," and that the goods sued for constituted the equipment of the shoe department in said fashion shop; that the fashion shop went into bankruptcy, and at the receiver's sale the defendant, Seidenbach's, bought the goods and assets of the shop, not including, however, this equipment which remained in the building, and Seidenbach's, in taking possession of the goods and place of business of the fashion shop, took over also the possession of this equipment; that the defendant wished to purchase these fixtures, but they were unable to agree on a price. However, the defendant consented that the fixtures remain in the place of business until Mr. Seidenbach could purchase some of his own.

The statements indicate that it was to be for only a very short time—about three weeks, or such a matter. Defendant's counsel admits that the plaintiff was the owner of the property, and allowed defendant the use of the same, but never sold or rented the same. It was admitted that plaintiff is a corporation organized under the laws of the state of Massachusetts, and did not domesticate properly within the state of Oklahoma until December 15, 1923. The items of property sued for are agreed upon by counsel, and the list of the same is set out at pages 29-A and 30-A of the record. The aggregate value thereof is stipulated to be $1,800, the value of each item agreed upon being shown in the record on such pages, and it is further stipulated that the rental value of the property is $15 per month. The following is the substance of the testimony:

S. A. Gaylor testifies for the plaintiff in substance as follows: That he lives at 1101 South Elwood, Tulsa, Okla., and that he has resided there six years; knows the A. E. Little Company, and that in February, 1921, he was manager of a shoe department at Tulsa; he is familiar with the property in question and that the same is the property of A. E. Little Company; that these fixtures and equipment were acquired by the A. E. Little Company in January, 1921. That A. E. Little Company secured from the Paris Fashion Shop a lease for a shoe department of which the A. E. Little Company was required to purchase all fixtures, and

that these fixtures were bought by the A. E. Little Company from Grand Rapids Show-case Company. The carpet was purchased from Mayo Furniture through Prager's Paris Fashion Shop so as to get a reduction in price. The furniture was insta.led in the shoe department of Prager's Paris Fashion Shop and remained there and is now at the same place. The A. E. Little Company had simply a space in Prager's Paris Fashion Shop, and the equipment remained there after the sale of the assets of Prager's Paris Fashion Shop, and at the receiver's sale it was specified that these fixtures should not be sold with the stock. The stock actually sold was that belonging to Prager's Paris Fashion Shop, and also the fixtures owned by them.

About September, 1922, A. E. Little Company leased space elsewhere and intended to move, and at this time Mr. Seidenbach, of the Seidenbach corporation, asked as a favor if he could use these fixtures until he could get his own fixtures, and this permission was given. That was the agreement. Mr. Seidenbach wished to purchase the fixtures but no understanding was arrived at. Witness states that in the latter part of November he was leaving town, and asked Mr. Seidenbach when he could have the fixtures, and that he stated that the following week he would turn them over to an assistant. Later Mr. Seidenbach evaded answering the assistant's demand. The witness has seen these fixtures, and they are still in the same building, and Seidenbach's is still using the same.

A. E. Little Company's shoe department at the time it was in Seidenbach's store was run as a department of Seidenbach's. The employees of Little used the sale books of Seidenbach's. All the advertising was under the name of Seidenbach, and the employees conformed to all the rules and regulations of the store of Seidenbach's.

"Q. How many people were employed in this department? A. At that time there were four people employed in that department. Q. Who paid their salaries? A. Their salaries were paid from the money— * * * Q. (By the Court) Did you domesticate before you brought this action? Mr. Martin: Yes, sir. With reference to testimony as to what A. E. Little Company did in reference to selling shoes, I will ask that testimony be withdrawn and not considered by the court. The Court: All right. Q. (By Mr. Martin) Now, Mr. Gaylor, do you know who is the owner of those fixtures at the present time? Mr. Boorstin: I object as having been asked and answered. The Court: I have let him answer the plaintiff is the owner of them. He has answered that. Mr. Martin: That is right. That is all."

Cross-examination: The fixtures in the store were not delivered to Seidenbach's at any time. They were in the store at the time Seidenbach s took possession.

"Q. The agreement with Seidenbacn's about operating that department? A. The agreement for selling shoes in the store had nothing to do with the fixtures. Q. Did Seidenbach's have possession of the store and key thereto? A. Yes, sir."

Witness says that the sales were all made through the channels of the store as if 'the stuff belonged to the store. A. E. Little Company negotiated for the purpose of leasing the same space in the store from Seidenbach's, and they ran a short time under oral agreement, but the negotiations fell through and they could not come to any agreement to lease the department.

"Q. Then what happened? A. A. E. Little Company had leased space elsewhere and moved their shoes out of the store, and at that time Mr. Seidenbach asked permission to use these fixtures until he could purchase his own, and he asked to use them for approximately three weeks at that time."

Since that time A. E. Little Company has done business in Tulsa continuously.

This reflects the entire testimony, at the conclusion of which, the defendant demurred for that the evidence did not show a cause of action, nor a right to enforce any contract, nor the right to bring the suit based upon any transactions occurring prior to domestication. The demurrer was overruled and exception noted, and the defendant stood upon his demurrer. There was also a motion for judgment by the defendant. This was overruled. Thereupon the court rendered judgment for the plaintiff for the recovery of the goods sued for, or for the recovery of $1,800 with six per cent. interest thereon from date until paid in lieu thereof, which is adjudged to be their value, and for the further sum of $510 representing the rental value of the goods and equipment.

Defendant's motion for new trial sets out five grounds, his petition in error six grounds, and, in his brief, while assigning six errors, his argument is addressed to four propositions of law, but the argument of these propositions seems to be based upon only one general proposition, to wit, that the plaintiff, under the admission of counsel and under the evidence introduced, is not entitled to bring this action, and that appears to the court to be the question in the case.

The following facts find substantial support in, or may be drawn as reasonable in-

ferences from the evidence: Prager's Paris Fashion Shop conducted a large business in Tulsa during 1921 and 1922. During a part of this time the plaintiff occupied a space in the fashion shop and conducted therein a retail shoe business as a department of the business of the shop. The employees of the shoe business were under the rules, regulation and control of the fashion shop; the purchase and sales books used had on them the name of the fashion shop, and their business was run through the books of the fashion shop in all respects as if it had been an integral part of the fashion shop business. The fashion shop retained the keys to the entire premises, and to all appearances the business conducted was a part of the fashion shop business. The employees were instructed that they were operating as a part of the fashion shop, in whose name the business was done and in whose name all of the advertising was carried.

It does not affirmatively appear who paid the employees operating the shoe department, but it may be inferred that they were paid by the fashion shop out of the money, however, of the shoe department.

Prager's Fashion Shop became financially embarrassed and was forced into bankruptcy. Its goods and assets were sold by a trustee, and the defendant, Seidenbach's, became the purchaser. The purchaser moved in and took charge of the premises and business, and during a short period conducted a bankruptcy sale, during which time the plaintiff carried on its business at the same place and under the same arrangement with Seidenbach's that it had formerly had with Prager's Paris Fashion Shop. But after a very short time, failing to arrive at a satisfactory business arrangement, the plaintiff either decided to move or quit business, and leased other premises for its goods, but the counters, shelving, carpets, and other equipment being fitted to the vacated room, Seidenbach's asked as a favor that the equipment be left there until he should be able to buy equipment of his own, and the plaintiff, as a favor to Seidenbach's, and, so far as the record goes, without any thought of compensation, either as rental or otherwise, granted the request. Some time later the plaintiff, whose manager was leaving town, asked the defendant when it could have the fixtures, and he replied that it could have them the following week. There is an intimation that the defendant later evaded answering a similar question by an assistant manager of the plaintiff, but the evidence does not disclose the conver-

sation had. The record is silent as to any further demand by plaintiff, and the next step in the matter is this suit, in which plaintiff sues for the possession of his goods, and the defendant sets up for his answer a general denial, and further, that since the transaction between plaintiff and defendant and by virtue of which the defendant received the property (referring, of course, to the loan of the equipment aforesaid) arose at a time when the plaintiff had not domesticated, said plaintiff could not enforce any of its legal rights against the defendant.

It will be observed that throughout this testimony, the defendant admits that these goods belonged to plaintiff. It further appears that the plaintiff has neither parted with title nor attempted to do so, nor has it rented the property nor let the same for hire. The proof is to the effect that the plaintiff did not even deliver the same to the place of business or possession of defendant, but simply consented that the same should remain where it was as a favor to the defendant and to be used by him temporarily—a short time—until he should make his own purchase of equipment.

It also appears from the evidence that the plaintiff, on December 15, 1923, properly domesticated, and became entitled to all the privileges accorded a corporation properly doing business in the state; that this was long before suit was brought.

Is the defense set up by the defendant in this case a bar to plaintiff's action? We think not. We are mindful of section 5438, C. O. S. 1921, providing:

"No foreign corporation, as above defined, which shall fail to comply with this article, can maintain any suit or action, either legal or equitable, in any of the courts of this state, upon any demand, whether arising out of contract or tort."

We also have in mind section 5435, C. O. S. 1921, providing:

"If any such foreign corporation shall fail to comply with the foregoing provisions of this article, all its contracts with citizens of this state, entered into after the approval of this article, shall be void as to the corporation, and no court of this state shall enforce the same in favor of the corporation."

It occurs to us to say: First, that the plaintiff is not seeking in this action to enforce any contract with the defendant, even if we assume that the permission to use the property without compensation—a commitment without consideration and made out of fairness and a spirit of friendly accommodation, with no thought of pay or legal con-

sequence—is such a contract as was had in contemplation by the Legislature. Treating the transaction as a contract (even though this seems to dignify it), it was terminable at the pleasure of the plaintiff, and certainly ought to have been so considered by the defendant when he promised to return the equipment the following week in answer to the manager's question. Second, this is an action in replevin, an action ex delicto, an action arising out of tort—a wrong. All of our actions of replevin may have a double aspect. They may be based upon an allegation of a wrongful taking and a wrongful detention. On the other hand, the action may be based upon an allegation of a lawful taking, but an unlawful or wrongful detention. These technical differences reflect the ancient actions of replevin and detinue at common law, replevin usually being predicated upon a wrongful taking and detinue upon a wrongful detention, but under out statute and under Code procedure the distinction as to various kinds of actions in civil matters is abolished, and we have but a single kind of action.

In an action of replevin, where the taking has been lawful, the courts generally hold that a demand is necessary. This averment of demand and refusal must be averred and supported by affirmative proof. Balch v. Jones, 61 Cal. 234. See 34 Cyc. 1474. The gist of this action is not the wrongful taking, but is the wrongful detention. When, therefore, did the detention by the defendant of plaintiff's property become wrongful? There was no legal demand shown in this case sufficient to put the defendant in the attitude of a wrongdoer, nor sufficient to give to the plaintiff a right to bring an action predicated upon a tort—the wrongful detention of his property.

It is true that in our state a demand is not a condition precedent to the suit; but **if defendant disclaims or does not assert any ownership of or right of possession to the property, the law does not treat him as a wrongdoer, but, on the other hand, it penalizes the plaintiff by making him responsible for costs for having brought an unauthorized action,** or for having sued one who was rightfully in possession of the property and in no default with respect thereto. The possession of the defendant was the possession of the owner—for it was held for him and by his permission after the fashion of a bailee not for hire. His unity of possession with the owner is like the possession of a tenant for his landlord. The analogy is extended by some courts to the extent that one who borrows property from another cannot deny the lender's title, or even retain the same against the lender for the benefit even of the real owner. In the case of Pulliam v. Burlingame, 81 Mo. 111, in the third paragraph of the syllabus it is said:

"It is a general rule that a bailee of property cannot dispute the title of his bailor, and where defendant borrowed a pair of mules of plaintiff, and at the time made no mention of any claim to them by himself or wife, he will be estopped to claim them against plaintiff, on the ground that they were the joint property of plaintiff and defendant's wife, and that he was holding them with and for his wife."

In the opinion the court uses these words:

"The contract of bailment necessarily admits the right of property in the bailor, and the obligation to return it to him at the termination of the term of bailment. In other words, a bailee, when he receives the property by virtue of the bailment, legally admits the right of the bailor to make the contract of bailment. After this subservient relation of the defendant to the plaintiff in respect to the property was established, the law forbids him to dispute the title of plaintiff. The relation is analogous to that which exists between landlord and tenant, a relation which prevents the tenant from setting up against his landlord, either an outstanding, or self-acquired adverse title; and from attorning to a stranger without the consent of his landlord, or in pursuance of a judgment or sale under execution or deed of trust, or forfeiture under mortgage. * * * 'When, therefore, the bailee is applied to for the property by a third party claiming title, his prudent course is to leave the claimant to his action, and, at once notify his bailor of the suit; he is not obliged to bear the burden of a litigation; and it is not safe for him to surrender the property on demand. For nothing will excuse a bailee from the duty to restore the property to his bailor, except he show that it was taken from him by due process of law, or by a person having the paramount title, or that the title of his bailor has terminated.' Edwards on Bailments (2d Ed.) sec. 73; Wells v. Thornton, 45 Barb. 390; * * * Blivin v. R. R. Co., 36 N. Y. 403; * * * Sinclair v. Murphy, 14 Mich. 392; * * * The Idaho, 93 U. S. 575."

At page 118 (51 Am. Rep. 229), in the case of Pulliam v. Burlingame, supra, the court says further:

"The relation of bailor and bailee is not antagonistic in any respect, or at any time. By accepting the property he not only admits the bailor's title, but he assumes, with respect to the thing bailed, a position of trust and confidence, which continues till it is returned or lawfully accounted for."

The demand, the refusal of which is necessary to constitute defendant a wrongdoer and sufficient to authorize a suit in replevin,

must amount to an unconditional demand (Shinn on Replevin, sec. 318; Cole v. Wabash, St. L. & P. Ry. Co., 21 Mo. 443), and the refusal must, in effect, be unconditional. There cannot be found in this evidence any such demand and refusal. An evasion or refusal to answer has been adjudged insufficient. In the case of William Dearing & Co. v. Andy Smith, 66 Vt. 60, the court says:

"It is not claimed that the defendant unlawfully took the machine, but that he unlawfully detained it from the plaintiffs. The claim is based upon the fact that the plaintiffs' attorney wrote the defendant a letter, demanding the machine, to which the defendant made no reply. The omission of the defendant to reply to the letter cannot be regarded as an unlawful detaining of the machine. * * * A party cannot be subjected to the expense of a replevin suit unless he has unlawfully taken, or unlawfully detained, property from the owner or the person entitled to the possession thereof."

When, therefore, if at all, did defendant assume an antagonistic attitude or commit a tortious act with respect to plaintiff's property? The answer is obvious: **Not until he answered in this suit denying plaintiff's title and right of possession.** This conduct is held by practically all the courts sufficient not only to authorize a suit in replevin—in tort—by plaintiff, but also to waive any precedent demand.

If we are right in our deductions above, it must logically follow that the tort upon which suit is predicated, did not arise until long after plaintiff had domesticated, and there was, therefore, nothing to prevent plaintiff from entering our courts to redress this wrong.

We have in mind, of course, that the petition alleged a demand long before suit; but the evidence does not support the allegation, and it was proved without objection, or admitted, that the property in fact belonged to plaintiff, and possession thereof was taken under plaintiff, and that he was the owner and entitled to possession thereof unless the matters with respect to domestication precluded the assertion of his right thereto. The bringing of the suit and the denial of the defendant furnished in effect the necessary demand and refusal.

Defendant in his brief spends much time and effort to show that since the plaintiff came into possession under a contract, to wit, the loan agreement—and that since the contract could not be enforced by the plaintiff, the conversion of the property months afterward is only a breach of the contract,

and that such conversion is referable and must relate back to the date of the contract. It seems to us that the contract or loan agreement is a mere incident, simply accounting for the possession of the goods by defendant. It furnished him the opportunity only to deal with the goods. It did not account for, nor was it an incentive to, his later wrongful claim of title or possession. The manner of his acquisition or possession seems to us immaterial, provided he knew the goods belonged to the plaintiff. Suppose defendant had found the goods, but later learned that the plaintiff was the owner. Defendant's conversion in such instance would be just as wrongful, and plaintiff's right of action would not arise, until there was such an act as amounted to conversion or outright denial of plaintiff's title. Or suppose one were entrusted with a package of goods, and the unfaithful bailee wrongfully opened the package and converted, embezzled or stole the contents. It would be idle to say that the criminal act arose out of the contract of bailment. It is too clear for argument that the act in itself arose out of the criminal intent which may have been conceived weeks or months after the contract of bailment was entered into, and certain it is that the owner's right of action did not accrue and could not have accrued until the wrongful act of the unfaithful bailee. Of course, there lies back of all torts a sort of contract read into their relations by the law, to the effect that each member of society owes it to his neighbor not to wrong him in his person or estate, and in the instant case it would make no difference how defendant acquired possession of the goods, provided only that he knew that the same belonged to plaintiff. He owed the plaintiff the duty to restore these goods irrespective of any contract, except the general contract that the law implies that one shall not take the property of his neighbor, and the breach of this duty made the defendant a wrongdoer, and furnished the plaintiff his right of action at the date of the wrongdoing.

In this case there was a recovery by the plaintiff, not only of the specific property, but a judgment for $510, the reasonable rental value thereof, under a stipulation in the cause that the rental value was $15 per month. The recovery of this amount must have been grounded, either upon an express contract of the parties, of which we perceive no evidence, or upon an implied contract read into the conduct of the parties by operation of law. In either event such contract must have been for plaintiff's benefit,

and must have been before domestication, and therefore the contract, express or implied, comes directly under the denunciation of our statutes quoted above, and the same is void and cannot be supported, by reason of all of which it is held that the judgment below should be vacated as to the recovery of $510, and affirmed in all other respects, and the lower court is instructed to make all proper orders in conformity with this holding.

DIFFENDAFFER, HERR, JEFFREY, and HALL, Commissioners, concur.

Note.—See under (1) 14a C. J. p. 1312, §4015 (Anno): 34 Cyc. pp. 1411, 1413 (Anno), 1491; 23 R. C. L. p. 888; 4 R. C. L. Supp. p. 1510: 5 R. C. L. Supp. p 1249. (2) 14a C. J. p. 1312, §4015 (Anno). (3) 14a C. J. p. 1312, §4015 (Anno); 34 Cyc. p. 1354.