## SEIDENBACH'S et al. v. UNDERWOOD, Trustee in Bankruptcy.

No. 25178.   Oct. 20, 1936.

Rehearing Denied Dec. 8, 1936.

Application for Leave to File Second Petition for Rehearing Denied Jan. 9, 1937.

M. A. Breckinridge, for plaintiffs in error.

Hulette F. Aby, William F. Tucker, and William H. Martin, for defendant in error.

PER CURIAM. This court in the case of Seidenbach's v. A. E. Little Co., 128 Okla. 65, 261 P. 175, affirmed a judgment of the district court of Tulsa county wherein in a replevin action it was adjudged that the plaintiff, A. E. Little Company, recover of the defendant, Seidenbach's, possession of certain store fixtures or the value thereof in the sum of $1,800. The defendant during the pendency of said action in the trial court had retained possession of the property under a redelivery bond executed by said defendant and its sureties. The defendant retained possession of the property pending its appeal by virtue of a supersedeas bond executed by the same parties who executed the redelivery bond. The mandate of this court was issued December 2, 1927, filed in the trial court December 5, 1927, and spread of record therein on December 6, 1927.

On December 3, 1932, the defendant in error here, the trustee in bankruptcy of A. E. Little Company, commenced an action against Seidenbach's, plaintiff in error here, upon the redelivery and supersedeas bonds referred to above, alleging that after said replevin judgment had become final Seidenbach's had failed and refused to comply with said judgment, either by delivering possession of the property or by paying its value. Seidenbach's defended on the grounds that said action was barred by the five-year statute of limitations, and that subsequent to the affirmance of said replevin judgment Seidenbach's had tendered to A. E. Little Company a part of said property, together with the money value of the property not tendered, the contention being that such tender discharged liability on the supersedeas and redelivery bonds. The case was tried to a jury, and at the close of all the evidence the trial court directed a verdict in favor of the

plaintiff therein for the sum of $1,800, together with interest thereon from the 29th day of September, 1925, the same being the amount of the alternative money judgment theretofore rendered in the replevin action, and affirmed by this court as stated above. It is from the judgment entered upon the directed verdict that this appeal is taken. The parties will be referred to hereinafter as they appeared in the court below.

Is the action barred by the statute of limitations? The defendant urges that the cause of action accrued on December 2, 1927, the date on which the mandate was issued, and that, the action being brought on December 3, 1932, the bar of the statute was complete. The plaintiff contends that the cause of action accrued not earlier than December 5, 1927, the date upon which the mandate was filed in the lower court, and that therefore the action was brought within five years from the date of the accrual of the cause of action. No question is raised either in this court or in the trial court as to the applicability of the five-year statute. Such question is therefore not before us. If the five-year statute is not the applicable one, then the defense that the action is barred by another statute providing for a shorter period of limitation has been waived. It is certainly true that no statute providing for a longer period of limitation applies. We therefore confine our holding to the question of whether the cause of action accrued on the date of the issuance of the mandate or at a later date.

The cause of action accrued in no event earlier than the date upon which the mandate of the Supreme Court was filed in the trial court. The alternative judgment did not become final until that date, but remained subject to modification or reversal by this court. The case of Board of County Commissioners of Rogers County v. Baxter, 113 Okla. 280, 241 P. 752, involved an action which could not have been brought until the plaintiff received a favorable decision in an appeal from a judgment in another action. In that case it was urged that the action was barred, inasmuch as it (being one for tort) was not brought within two years from the date of this court's decision in the earlier case. In that case it was held that the cause of action did not accrue until the mandate of the Supreme Court had reached the trial court.

The appeal from the alternative judgment was not one in which on affirmance the defendant in error therein could have moved in the Supreme Court for judgment against the supersedeas bond sureties. Such can be done, of course, in an appeal from a simple money judgment. This is true because immediately upon affirmance of a money judgment the condition of the supersedeas bond is broken, liability thereon accrues, and the obligation of the sureties to pay is immediate, without regard to any further contingencies. But in the case of an affirmance of an alternative judgment in a replevin action, the liability of the sureties (and even the liability of the appellant principal) yet depends upon whether or not within a reasonable time thereafter the principal delivers to the successful party the replevined property in substantially as good condition and of the same value as when received.

It is doubtful that the cause of action in the instant case accrued immediately upon the filing of the mandate in the trial court. Where a final judgment is rendered in a replevin action against the party in possession of the property, such party must promptly deliver the property to the successful party. But he has a **reasonable time** within which to make a prompt delivery. And until the expiration of such reasonable time, it cannot be said that the unsuccessful party has refused to comply with the judgment of the court; and not until then are the conditions of the redelivery bond or supersedeas bond broken; and not until then can an action be maintained upon such bonds. However, it is unnecessary to decide this question. The holding is that in any event the cause of action did not accrue earlier than the filing of the mandate in the lower court, and, consequently, that the action was brought within five years from the date upon which an action first could have been brought.

Inasmuch as the trial court directed a verdict against the defendant, in determining whether the same was erroneous we must eliminate from consideration all of the evidence and all of the inferences which conflict with defendant's evidence. First National Bank of Mounds v. Cox, 83 Okla. 1, 200 P. 238. And all of the facts which defendant's evidence in the slightest degree tends to prove, and all inferences or conclusions which reasonably and logically may be drawn therefrom, must be considered as admitted. Rose v. Woldert Gro. Co., 54 Okla. 566, 154 P. 531. From within the confines of the foregoing rules we have carefully reviewed the evidence in this case, and we are of the opinion that the court below correctly directed a verdict against the defendant.

As hereinbefore stated, the defense to the merits of the case was that soon after the

affirmance of said replevin judgment the defendant had tendered to the plaintiff a part of the property involved, together with the money value of such part of the property as could not be delivered. It appears from the evidence that in the early part of December, 1927, J. L. Seidenbach, apparently the chief officer of Seidenbach's, a corporation, learned that the judgment against the defendant in the replevin action had been affirmed by this court and had become final. Three or four days thereafter Seidenbach had a conversation with one Gaylor, the local manager for A. E. Little Company. Seidenbach told Gaylor that in view of the decision of the Supreme Court, Seidenbach's attorney had advised him to "gather up the fixtures and deliver them, or give them," to Gaylor. Seidenbach explained that he was unable to locate all of the fixtures involved in the replevin action, but that he had a list of all that are on hand, and that he had figured the value of that part of the property which he was able to deliver.

It appears that in the replevin judgment a value had been fixed upon each of the various articles of property, the sum total of such values being in the amount of $1,800, the amount of the alternative money judgment. Seidenbach estimated that the value of the property remaining in his hands was in the sum of $1,641.40. Measured by the judgment fixing the value of the various articles of property, however, that portion of the property in his hands which he was ready and able to deliver was of a value of only $1,031.54 (without taking into consideration depreciation of the property pending the appeal). The evidence discloses that such property had, in fact, depreciated in value to a considerable extent pending the appeal, but does not disclose the exact extent of such depreciation. Therefore, it is impossible to determine from the evidence the actual value of this property. We are, however, able to say that such value did not exceed the sum of $1,031.54.

Seidenbach offered this property to Gaylor upon the representation that the same was of a value of $1,641.40, and further offered to give Gaylor a check for the difference between the sums of $1,800 and said sum of $1,641.40, together with interest thereon and for the costs of the replevin action. According to Seidenbach's testimony Gaylor did not go with him to view the property on hand, nor did he accept such property or the check which Seidenbach offered to give him, stating "that he had no place to put these fixtures * * * and he didn't want" Seidenbach "to send those fixtures down there;" that Seidenbach "could just hold them." Seidenbach further testified that Gaylor stated "that he would get in touch with his attorneys and let me know about what to do about that." That Seidenbach "then called him once after that and met him * * * once on the street * * * and asked him what he was going to do about it, and his last orders on it was that I shouldn't worry about it, there was no need for me to worry as long as he wasn't worrying, he would let me know just what he wanted to do." Seidenbach further testified that Gaylor went over the list which Seidenbach had prepared and agreed with Seidenbach that the value of the property on hand was as Seidenbach had estimated it to be, that Gaylor made no objection to the condition of the property at the time it was offered him; indeed, that Gaylor did not see the property; that Seidenbach offered to send the property wherever Gaylor wanted it delivered; that Gaylor made no objection to the sufficiency of the purported tender and at no time thereafter demanded the money from Seidenbach.

Under this evidence the defendant contends that an attempt was made to satisfy the replevin judgment; that is, that the defendant attempted to tender to the plaintiff a substantial portion of the property, together with a sum of money purporting to be the value of the property not tendered. Defendant further contends that inasmuch as Gaylor made no objection whatever to the amount or sufficiency of the tender, or to the condition of the property or to the manner in which the tender was made, the plaintiff waived any and all objections that might otherwise have been made to such purported tender, and that consequently all liability upon the redelivery and supersedeas bonds was thereby discharged.

In a long line of decisions of this court it has been held that:

"In an action of replevin, where there is an alternative judgment rendered against plaintiff for the return of the property taken, or its value, it is the duty of plaintiff to promptly and in good faith tender all of the same in as good condition as received, and a failure to do so will render his sureties liable on their undertaking for the full amount that defendant may be damaged.

"(a) In such a case, however, where plaintiff, within a reasonable time makes a good faith tender of a substantial part of the property taken, it is the duty of the defendant to accept the same and recoup on plaintiff's bond for any damages suffered."

628

See Leeper-Graves Co. v. First National Bank of Hobart, 26 Okla. 707, 110 P. 655; Yellow Manufacturing Acceptance Corp. v. Finnell 167 Okla. 653, 31 P. (2d) 884; Gerber v. Wehner, 96 Okla. 48, 220 P. 648; Caldwell v. Stiles, 80 Okla. 106, 194 P. 226; Fair v. Citizens' State Bank of Arlington, 69 Kan. 353, 76 P. 847; Dew v. Hoffman, 130 Okla. 247, 266 P. 1107. The rule applies alike to an unsuccessful plaintiff in possession of property under a replevin bond and an unsuccessful defendant in possession of property under a redelivery bond. The phrase, "in good faith," as used in the decisions, is more than a casual expression. It means that there must be an actual bona fide attempt to comply with replevin judgment and a good faith effort to make whole the successful litigant, either by returning to him all of the property in substantially as good condition as at the time when such litigant was deprived of the same, or to pay to such successful litigant the value thereof as fixed in the alternative judgment, or to return a substantial part of the property (where the balance of the same is readily and easily replaceable), together with the full value of the property not returned. The record in this case cannot be read without arriving at a firm conviction that a good faith tender was not made by the defendant herein. We cannot conceive of reasonable men arriving at any other conclusion. The defendant offered to return to the plaintiff little more than one-half of the replevin property, after having deprived the plaintiff of the same and having used it for a period of approximately five years. The defendant also offered to return, in lieu of the property which it was unable to return, a sum of money equal to less than one-fourth of the value of such property. There was no semblance of an honest attempt to comply with the judgment of the court. It is superfluous to add that plaintiff could not have been required to accept the offer.

According to Seidenbach's testimony, Gaylor not only made no objection to the purported tender, but actually agreed with Seidenbach that the tender was in all things sufficient. But he refused to accept the tender, because he had no place to store the property and because he wished to talk with his attorney before accepting the same. Conceding, as we must in this case, the truth of such statement, such an agreement was not pleaded by the defendant. Neither would the same, if pleaded, have any binding effect, inasmuch as it amounts to an agreement to accept a lesser sum in full

discharge of an indisputable and liquidated debt, a debt very definitely fixed by judgments of both the lower court and this court. Did Gaylor's acts constitute a waiver of a proper tender and thereby discharge liability upon the bonds? It has been very aptly said:

"The acts, conduct, or circumstance relied upon should make out a clear case of waiver. It will not be implied from slight circumstances, but must be evidenced by acts or conduct, by an unequivocal and decisive act, clearly proved; it will be implied only from an unequivocal and decisive act of the party, clearly showing his purpose to waive the right in question, or conduct tending to show some element of an estoppel on his part. When a waiver is claimed, the question whether it is established or not may depend very much upon the nature of the condition or the thing which it is asserted was waived. Thus, the courts, not favoring forfeitures, are usually inclined to take hold of any circumstances which indicate an election to waive a forfeiture, or any agreement to do so on which the party has relied and acted; the waiver of a forfeiture may be sustained by circumstances which do not present the strong equities which would be required to create an estoppel. On the other hand, where a right, statutory or otherwise, has become vested, the courts are slow to declare the same waived, unless the language or the conduct of the party possessing the right shows that he intended to waive it, or his language or conduct are such that it can be clearly inferred, or it may be said as a matter of law, that he has waived the right. * * *" 67 C. J. 309.

The doctrine of waiver is often difficult of application; each case involving the question must be decided upon the facts peculiar to it. Zwietusch v. Luerhring, 156 Wis. 96, 144 N. W. 257, 264. The doctrine of waiver has been said to be a rule of judicial policy, the legal outgrowth of judicial abhorrence, so to speak, of a person's taking inconsistent positions and gaining advantages thereby through the aid of courts. Pabst Brewing Co. v. Milwaukee, 126 Wis. 110, 105 N. W. 563. There is no place under the facts revealed in this record for the application of such doctrine. Before a waiver of the sufficiency of an attempted tender can be found to exist, there must first have been an act upon the part of the tenderer which can be said to approximate a bona fide effort to make a tender. Such is not disclosed in this case, and we find no error in the action of the trial court directing a verdict against the defendant. The judgment is affirmed.

The Supreme Court acknowledges the aid

of Attorneys Mort Brown, Stephen Chandler, and John Cantrell in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Brown and approved by Mr. Chandler and Mr. Cantrell, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court; this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and PHELPS, CORN, and GIBSON, JJ., concur.