963 F.2d 283
 Fareed M. FARHA, Trustee of the Farha Sales, Inc., Defined
Benefit Pension Plan, Plaintiff/Appellant,
Fareed M. Farha, an individual, Additional Party Plaintiff/Appellant,
Rebecca O. Farha, an individual, Additional Party Plaintiff,
v.
FEDERAL DEPOSIT INSURANCE CORPORATION, a corporation,
Defendant/Appellee,
Federal Deposit Insurance Corporation, as Liquidating Agent
for First National Bank of Luther, Luther,
Oklahoma, Intervenor-Additional
Defendant/Appellee.
 No. 91-6191.
 United States Court of Appeals,
Tenth Circuit.
 April 23, 1992.
 
 F.H. Wright, Wright & Cole, Oklahoma City, Okl., for plaintiff/appellant.
 Ricki Sonders, Edwards, Sonders & Propester, Oklahoma City, Okl. (Joel W. Harmon, Edwards, Sonders & Propester, with her on the brief), for defendant/appellee.
 Before ANDERSON, ALDISERT,* and BRORBY, Circuit Judges.
 ALDISERT, Senior Circuit Judge.
 
 
 1
 Fareed M. Farha, individually and as trustee of a benefit pension plan, and Rebecca Farha, filed a complaint in the district court against the Federal Deposit Insurance Corp. (FDIC) to recover two certificates of deposit (CDs) or their cash equivalent. The CDs were issued originally by the First National Bank of Luther, Oklahoma, and later transferred, following the bank's insolvency, to the First Wagoner Bank and Trust Co. under a Purchase and Assumption Agreement supervised by the FDIC. The deposits themselves were disbursed by the FDIC, primarily to offset a debt owed the Luther bank by Mr. Farha, as an individual, with the balance being paid over to the payees listed on the CDs.
 
 
 2
 The complaint asserts two causes of action. The "First Cause of Action (Replevin)," App. 6-8, contains a request for return of the CDs or in the alternative a money judgment in the amount represented by the CDs. The "Second Cause of Action (Breach of Contract)," App. 8-9, requests money damages in the amount of the CDs. The district court entered summary judgment in favor of the FDIC. Fareed M. Farha, individually and as trustee, has appealed.
 
 
 3
 The principal issue before us is whether the appellant may obtain relief from the FDIC under theories of contract or tort. We hold that he may not and thus affirm.
 
 
 4
 The district court entertained jurisdiction pursuant to 12 U.S.C. § 1819 (Fourth) and 28 U.S.C. § 1331. Appeal was timely filed under Rule 4(a), Fed.R.App.P. We have jurisdiction in this appeal from a final judgment. 28 U.S.C. § 1291.
 
 I.
 
 5
 The facts are not in dispute. Plaintiff Fareed M. Farha was trustee and sole participant in the Farha Sales, Inc. Defined Benefit Pension Plan. He came before the court as an individual and in his capacity as trustee. His wife Rebecca was also a plaintiff but did not appeal from the district court's judgment.
 
 
 6
 Farha individually owed certain debts to the First National Bank of Luther, amounting to $291,874.24, evidenced by promissory notes which came due on August 18, 1987, but were not paid. Three CDs, representing deposits in the Luther bank, also figure in this litigation. The CDs listed various persons as payees:
 
 
 7
 CD No. Payees
5328 Fareed M. Farha
 Rebecca O. Farha
 the pension plan
5336 Fareed M. Farha
 Rebecca O. Farha
 the pension plan
5371 Fareed M. Farha
 the pension plan
 
 
 8
 The Luther bank was declared insolvent on August 13, 1987, and the FDIC was appointed the liquidating agent. At that time, the CDs were in possession of the bank and were listed in the Inventory of Safekeeping prepared by the FDIC after the bank was closed. App. 50, 57. They are also listed on two General Receipt and Safekeeping Agreements. App. 13, 16. These agreements purport to be between the payees and the bank but are not signed.
 
 
 9
 After the Luther bank failed, the deposits represented by the CDs were transferred to First Wagoner Bank and Trust Co., under the terms of a Purchase and Assumption Agreement. FDIC, in its corporate capacity, acquired the promissory notes owed by Farha.
 
 
 10
 On September 10, 1987, First Wagoner sent Farha, individually and as trustee, and Rebecca Farha, a cashier's check for $140,705.91, representing the proceeds from CD No. 5336. The check reflected the listing of payees on the CD: Farha, Rebecca Farha, and the pension plan. All of the payees, however, did not endorse the check; it was endorsed by only one of the three payees, Farha, as trustee of the pension plan. App. 27.
 
 
 11
 On January 22, 1988, First Wagoner remitted to FDIC the deposits represented by the two remaining CDs. FDIC in its corporate capacity then offset the deposits against the promissory notes, applying $302,870.53 in proceeds against Farha's individual debt in that amount. FDIC paid the remaining proceeds of $14,093.76 to the pension plan.
 
 II.
 
 12
 In the replevin claim in the district court, plaintiffs sought to recover the two unredeemed CDs or the equivalent value thereof. In the alternative claim, they sought to recover the equivalent value as damages under a breach of contract theory. They also argued that the offset performed by the FDIC was wrongful, a claim that the district court found to sound in tort. Finally, they argued that a prior, unpublished ruling of this court, Federal Deposit Ins. Corp. v. Farha, No. 87-1530 (10th Cir. Oct. 10, 1989), had preclusive effect as to the wrongfulness of using the deposits to offset Farha's debts as an individual.
 
 
 13
 The district court determined that plaintiffs had not satisfied the requirements of res judicata or collateral estoppel regarding the October 1989 decision and that jurisdiction of any contract or tort claims did not lie. The court ruled that it did not have jurisdiction to entertain the claim in contract because the dispute concerns a sum in excess of $300,000, and the U.S. Court of Claims has exclusive jurisdiction of contract claims against the FDIC in excess of $10,000. 28 U.S.C. § 1346(a)(2). The court also ruled that it could not entertain a claim sounding in tort, because the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq., controlled, and Farha had failed to file a claim with the FDIC prior to filing the action in court. Accordingly, the court entered summary judgment in favor of FDIC. Farha's timely appeal, individually and as trustee, followed (We will refer to him collectively as "Farha").
 
 III.
 
 14
 On appeal from a grant of summary judgment, this court employs de novo review. Wheeler v. Hurdman, 825 F.2d 257, 260 (10th Cir.), cert. denied, 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 501 (1987). We consider the evidence in the light most favorable to the nonmoving party and determine if a genuine issue exists as to any material fact and if the court below correctly applied the relevant law. Ash Creek Mining Co. v. Lujan, 934 F.2d 240, 243 (10th Cir.1991) (citing Hokansen v. United States, 868 F.2d 372, 374 (10th Cir.1989)).
 
 IV.
 
 15
 We first consider whether the district court erred in refusing to give preclusive effect to a prior decision of this court. We find no error in the district court's ruling. The court noted, "While the Trustee has argued that the doctrines of res judicata and collateral estoppel bar the instant litigation, he has not attempted to explain how these doctrines apply to the issues in the case at bar. Mere conclusions that such doctrines are applicable are not sufficient." D.Ct. Op. at 5.
 
 
 16
 Farha's argument before this court is similarly unsupported. The prior decision concerned FDIC's power to garnish certain funds of the pension plan in another context. The question bears some resemblance to the issues raised here, but mere resemblance is not enough. All elements of issue preclusion must be present to establish the prior case's preclusive effect. They are not present here. We find no error in the district court's determination.
 
 V.
 
 17
 We next address what we perceive to be the major contention raised by Farha, which concerns the precise character of his claims against the FDIC. He appears to argue that his first claim sounds neither in contract nor tort but is based exclusively on replevin. Replevin in Oklahoma is governed by Okl.St.Ann. tit. 12, § 1571 et seq. The statutory remedy is set out in § 1580, which provides in relevant part:
 
 
 18
 In an action to recover the possession of personal property, judgment for the plaintiff may be for the possession, or for the recovery of possession, or the value thereof in case a delivery cannot be had, and of damages for the detention.
 
 
 19
 Under Oklahoma law, replevin tests the right to possess the disputed personal property. Brook v. James A. Cullimore & Co., 436 P.2d 32, 34 (Okla.1967). The Oklahoma Supreme Court has recognized replevin as an appropriate form of action to recover a promissory note, Enid Bank & Trust Co. v. Noll, 183 Okla. 647, 84 P.2d 24 (1938), and a certificate of deposit is essentially a promissory note. Hendricks v. Grant County Bank, 379 P.2d 693, 696 (Okla.1963); U.C.C. § 3-104(j), 2 U.L.A. 26 (1991). Federal courts will entertain state-law replevin actions. Rule 64, Fed.R.Civ.P. See, e.g., Garoogian v. Medlock, 592 F.2d 997, 998, 1000 (8th Cir.1979).
 
 A.
 
 20
 Clearly, Farha may not recover possession of the CDs as written instruments signifying the Luther bank's indebtedness to him. The general deposits evidenced by the CDs had already been disbursed by FDIC as liquidating agent for the Luther bank. Farha was one of the payees of a portion of the proceeds, and he accepted them without question; the balance was applied by FDIC to offset the personal debt owed by Farha, individually, to the Luther bank. Accordingly, the CDs were no longer in existence as viable commercial paper at the time the replevin action was filed in federal court. Not being in existence as commercial instruments of value, they no longer could be subject to the possessory remedy of the Oklahoma replevin statute.
 
 B.
 
 21
 Faced with this reality, and recognizing the procedural obstacles that prevent his asserting an orthodox contract or tort claim, as clearly and we believe correctly delineated by the district court, Farha would ask us to tread upon some carefully placed stepping stones to grant him money damages without encountering the Scylla of contract or the Charybdis of tort. He asks us to recognize what he describes as contract-free and tort-free Oklahoma substantive law found in that state's replevin statute, which provides for money damages for "the value [of personal property] in case a delivery cannot be had, and of damages for the detention." But in doing so, he has disregarded the essential anatomy of a replevin action, which we will now describe.
 
 1.
 
 22
 To begin our analysis, we must recognize the interrelationship among the common law actions of replevin, detinue and trover. The Oklahoma Supreme Court has explained:
 
 
 23
 All rights relating to property by which we hold, own, possess, or use it are just such as the law gives us. A party claiming the right of ownership in and of immediate possession to personal property, and seeking to enforce such right, may bring replevin or detinue, or, if he elects, he may abandon the property to his adversary and sue in trover. In trover, however, it is not the property or its possession which he seeks, but damages sufficient to cover its value, while in replevin or detinue it is primarily the property which he is pursuing, and he takes a judgment for its value only in the absence of ability to secure the specific articles claimed.
 
 
 24
 Leeper, Graves & Co. v. First Nat. Bank of Hobart, 26 Okl. 707, 719-20, 110 P. 655, 660 (1910).
 
 
 25
 At common law, there are six actions ex delicto (as distinguished from actions ex contractu ): "These actions are brought for the redress of wrongs, and include also actions for the recovery of real and personal property: (A) Trespass (B) Trespass on the Case (C) Trover (D) Ejectment (E) Detinue (F) Replevin." J. Koffler & A. Reppy, Common Law Pleading 56 (1969). Originally, replevin was available only where the goods were unlawfully taken; detinue was available where the original taking was lawful. Mennie v. Blake, 6 Ellis & Black 843, 119 Eng.Rep. 1078 (1856); see 3 William Blackstone, Commentaries ("An action of replevin, the regular way of contesting the validity of the transaction, is founded ... upon a distress taken wrongfully and without sufficient cause...."); Coke, Commentary on Littleton 145b (1823) (Where goods are improperly distrained, "the owner may have a writ de replegiare facias .... Replegiare is compounded of re and plegiare, as much as to say, to redeliver upon pledges and sureties.") Ultimately, detinue also became available where the taking was tortious.
 
 
 26
 The two actions at common law nevertheless are distinguishable: In replevin the plaintiff is restored to possession prior to the determination of the rights of the parties; in detinue the plaintiff does not recover the goods until the rights have been determined, and not even then if the defendant prefers to keep the chattel and pay its assessed value. Tierney v. Corbett, 2 Mackey 264 (S.C.D.C.1883); Kirkland v. Pilcher, 174 Ala. 170, 57 So. 46 (1911). See also Maitland, The Forms of Action at Common Law 38-39 (A.H. Chaytor & W.J. Whitaker eds. 1987) (tracing development of detinue out of "debt-detinue"; "Gradually this action divides itself in two, Detinue for a specific chattel, Debt for a sum of money--this differentiation takes place early in the thirteenth century.")
 
 
 27
 Trover has its roots in the law of tort and provides relief for a wrongful taking. "In its origin, the Action of Trover, or Trover and Conversion, was a specialized Form of the Action of Trespass on the Case to Recover Damages against a person who had found goods, and refused to deliver them to the owner, but converted them to his own use." Common Law Pleading at 206.
 
 2.
 
 28
 All this mandates the irrefragable conclusion that the relief accorded in the seizure of property remedy of replevin sounds either in tort or in contract or a combination of both. The possessory portion of Oklahoma's statutory form of action is traceable to the common law writ of replevin which, as we have seen, was originally founded in the tort of an unlawful taking. The monetary damages portion, as the Oklahoma Supreme Court has explained in Leeper, Graves & Co., is traceable to the action of trover, a common law action sounding in the tort of conversion. To the extent that the statute calls for "damages for detention of the same", its jurisprudential ancestor is either trover or detinue. As we have seen, detinue is a cause of action for possession of money damages originating in the combined action of debt (contract) and detinue (possession) and gradually being made available as relief for a wrongful as well as a lawful taking. To be sure, appellant is relying on the statutory form of replevin and not its common law form. But absent any contrary statutory definition, we are required to look to common law for the meaning of the term "replevin" as used in the statute.
 
 
 29
 We hold, therefore, that any claim on the money damages portion of the Oklahoma replevin statute, Section 1580, must be based either on contract or tort.
 
 VI.
 
 30
 Farha styled his second claim "Breach of Contract." The district court found that his first claim sounded in tort, which Farha vigorously disputes. Reply Br. at 4. What is certain is that each claim is based either in contract or in tort. This simple disjunction dictates the disposition of the appeal.
 
 A.
 
 31
 Farha states that he asserts no contract claim against the FDIC in its corporate capacity. Reply Br. at 8. He also states that he does not seek to enforce the General Receipt and Safekeeping Agreement against the FDIC. Id. Rather, his claim is that he is entitled to recover the CDs based on an implied bailment contract. He states that "a contractual relationship arises by operation of law due to the mere holding of one person's property by another." Id.
 
 
 32
 The United States may be subject to suit for implied-in-fact contracts. 28 U.S.C. § 1346(a)(2); United States v. Minnesota Mut. Inv. Co., 271 U.S. 212, 217, 46 S.Ct. 501, 503, 70 L.Ed. 911 (1926); Hatzlachh Supply Co., Inc. v. United States, 444 U.S. 460, 465, 100 S.Ct. 647, 650, 62 L.Ed.2d 614 (1980) (per curiam). Assuming without deciding that a bailment contract does exist between FDIC and Farha, we agree with the district court that Farha may not press the merits of his claim in the district court. The United States Claims Court has exclusive jurisdiction over contract actions where the amount in controversy exceeds $10,000. 28 U.S.C. § 1346(a)(2). The present dispute clearly concerns the deposits, a sum of more than $300,000. That was the amount claimed as an alternative remedy in the district court. Farha may not now claim that the certificates themselves have only a nominal value, and therefore vest contract jurisdiction in the district court. Farha himself has placed the value on the paper and in so doing has delineated the proper amount for jurisdictional purposes.
 
 
 33
 Because the amount in controversy exceeds the jurisdictional limit set by 28 U.S.C. § 1346(a)(2), we need not reach the merits of Farha's contract claims. The district court properly held that it was without jurisdiction.
 
 B.
 
 34
 Alternatively, Farha argues that the FDIC wrongfully offset the deposits against the debts he owed. This contention of necessity speaks of tortious conversion of the proceeds of the CDs, notwithstanding Farha's protestations that he is not seeking any recovery in tort. Reply Br. at 4. Farha cannot clap with one hand: He cannot allege wrongful appropriation of funds and contend that he is not making a tort claim. The district court noted that, to the extent that the argument sounded in tort, it was subject to the requirements of the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq. One requirement is the filing of a claim with the allegedly offending agency. Id. § 2675(a). This court has held that the requirement is met by filing " '(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim.' " Cizek v. United States, 953 F.2d 1232, 1233 (10th Cir.1992) (quoting Warren v. United States Dept. of Interior Bureau of Land Management, 724 F.2d 776, 780 (9th Cir.1984)). "The requirements are jurisdictional and cannot be waived." Id. Farha did not comply with these requirements. The district court properly held that it was without jurisdiction to consider any tort claims.
 
 VII.
 
 35
 We conclude that no genuine issue exists as to any material fact and that FDIC was entitled to judgment as a matter of law. The judgment of the district court is
 
 
 36
 AFFIRMED.
 
 
 
 *
 Ruggero J. Aldisert, Senior Circuit Judge, United States Court of Appeals for the Third Circuit, sitting by designation