**GWN PETROLEUM CORP., Plaintiff,**

and

**Four–O–One Corporation,
Plaintiff–Appellant,**

v.

**OK–TEX OIL & GAS, INC., Turbo Oil & Gas, Inc., L.D. Cook, Pamela J. Hobbs, First Bank & Trust Company, Defendants,**

and

**Federal Deposit Insurance Corporation,
Defendant–Appellee.**

No. 92–6054.

United States Court of Appeals,
Tenth Circuit.

July 9, 1993.

Richard K. Goodwin, Oklahoma City, OK, for plaintiff-appellant.

Jerome A. Madden, Counsel, FDIC, Washington DC (Michael S. Richie, FDIC, Oklahoma City, OK; Ann S. DuRoss, Asst. Gen. Counsel, and Richard J. Osterman, Sr. Counsel, FDIC, Washington DC, with him on the brief), for defendant-appellee.

Before EBEL, Circuit Judge, McWILLIAMS, Senior Circuit Judge, and OWEN, Senior District Judge.*

EBEL, Circuit Judge.

This appeal arises out of a garnishment action instituted by the appellant, Four–O–One Corp. ("Four–O–One"), to recover proceeds from the sale of oil and gas that were paid to the appellee, the Federal Deposit Insurance Corporation ("FDIC"). The district court granted the FDIC's motion for summary judgment, denying Four–O–One relief. We affirm.

## FACTS

Both parties accepted, and set forth in their briefs, the description of the facts of this case as set forth by the district court. They are as follows:

> In early 1984 Sutherland Well Service, Inc., ("Sutherland"), Four–O–One's predecessor in interest, filed Statements of Lien Against Leasehold and Well for Labor and Materials Furnished against Ok–Tex Oil Co. ("Ok–Tex"). These liens, filed in Stephens County, Oklahoma, covered wells, the leasehold estate, equipment, pipelines, buildings upon the premises, and all tools and supplies located thereon or used in connection therewith, for the leasehold estate underlying the Southeast Quarter of Section 22, Township 1 North, Range 9 West, Stephens County, Oklahoma (hereinafter "leasehold estate").

First City Bank, N.A. ("the bank") loaned money to Ok–Tex and in 1983 and early 1984 signed two agreements with Ok–Tex entitled Financing Statement, Security Agreement and Mortgage of Oil and Gas Property. The two mortgage agreements between the bank and Ok–Tex were filed in Stevens County and covered, among other property, the leasehold estate described above, which is the only property at issue in this action.

Both of the mortgage agreements covered the leasehold estates and the mineral interests of the property described therein. The mortgages also contained an Assignment of Production clause (hereinafter "clause") that allowed the bank, as mortgagee, to recover the proceeds of production from any of the wells covered by the mortgages, in the event of default by Ok–Tex.

In June of 1985, the FDIC took over as receiver for the bank. Beginning 30 May 1985 and continuing through 4 December 1985, Gray Pipeline, Inc. ("Gray"), the purchaser of production for the leasehold estate, paid the FDIC $41,290.66 in production proceeds, pursuant to the clause in the mortgages. Each of the checks was payable to the FDIC "for the account of Ok–Tex Oil & Gas, Inc.," and as such, was set off against the indebtedness owed to the bank by Ok–Tex.

On 5 September 1984, Sutherland filed suit in Oklahoma District Court for Stephens County (hereinafter "state court") to foreclose on its liens against Ok–Tex. Four–O–One was substituted as the plaintiff in the state court action in April of 1989, after it purchased from Sutherland all right, title and interest in and to the liens, accounts and causes of action concerning Ok–Tex. The FDIC, in its corporate capacity and as successor in interest to certain assets of the FDIC as receiver for the bank, was named as a defendant in the foreclosure action, along with Ok–Tex and other parties not involved in the present action.

---

† The Honorable Richard Owen, United States Senior District Judge, Southern District of New York, sitting by designation.

Judge George W. Lindley of Stevens County issued a Journal Entry of Judgment on 23 June 1989 against Ok–Tex for $44,504.76 in principal, $42,754.03 in interest (totalling $87,258.79), plus legal interest on the judgment, costs, and attorneys' fees. The Judgment also stated that Four–O–One's lien was foreclosed against the leasehold estate at issue here, "including all personal property located thereon or used in connection therewith...." Journal Entry of Judgment at 2.

Further, the Judgment stated that the above-described property interest of Ok–Tex should be sold at a sheriff's sale, and that the proceeds of the sale should be applied, in pertinent part, to: 1) the costs of the sale and of the foreclosure action; 2) the payment of Four–O–One's judgment; 3) the remainder, if any, to the Clerk of the Court. Finally, Judge Lindley ruled that any right, title, or interest that the FDIC had or claimed to have, through its mortgage on the leasehold estate, was subsequent, junior and inferior to the liens and interests of Four–O–One.

On 20 July 1990, Four–O–One acquired a deficiency judgment against Ok–Tex for $72,875.00—the balance of the judgment debt remaining after the sheriff's sale.

Four–O–One instituted the present garnishment proceeding in Oklahoma state court on October 5, 1990. The action was removed to the U.S. District Court for the Western District of Oklahoma by the FDIC.

Four–O–One submitted interrogatories to the FDIC, and based in part upon the answers that they received, Four–O–One filed a motion for summary judgment on May 10, 1991. The FDIC answered and filed a cross-motion for summary judgment on May 28, 1991. Four–O–One filed an answer to the FDIC's motion on June 3, 1991. Although all issues had been fully briefed, the court subsequently granted, over the objections of the plaintiff, a motion by the FDIC to amend. The court allowed the FDIC to supplement its discovery responses and to file a new motion and brief in support of summary judgment. However, it denied the FDIC's request to strike the FDIC's previous pleadings.

Based on the revised pleadings and supplemental briefs requested by the district court, the district court granted the motion for summary judgment filed by the FDIC and denied the motion filed by Four–O–One. The court found that Four–O–One failed to perfect or enforce its liens against the proceeds of production of oil and gas, and that the garnishment proceeding was barred by 12 U.S.C. §§ 1823 and 1825,[1] which preclude liens from attaching to the property of the FDIC in its corporate capacity or when acting as a receiver. A timely notice of appeal was filed on January 31, 1992.

On appeal, Four–O–One argues that: 1) its lien was perfected as to the proceeds of production;[2] 2) the action is not barred by 12 U.S.C. §§ 1825(b)(2) and 1823(d)(3)(A); and 3) the district court abused its discretion in allowing the FDIC to amend and supplement its discovery and pleadings. The FDIC responds by denying these contentions and claiming that the court is without jurisdiction because the case sounds in tort and is barred by the Federal Torts Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 et seq.[3] We affirm.

1. These provisions were enacted as part of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, 1989 U.S.C.C.A.N. (103 Stat.) 183 (codified as amended in scattered portions of 12 U.S.C.).

2. Because we find this garnishment action to be barred by 12 U.S.C. §§ 1825(b)(2) and 1823(d)(3)(A), we need not decide whether Four–O–One's statutory oil and gas lien attached to the "proceeds of production."

3. The FDIC would have this court recharacterize the action as a tort suit for wrongful conversion (i.e. that the FDIC is wrongly holding property

that belongs to the plaintiff). As so characterized, the FDIC claims that the action must be brought subject to the constraints of the Federal Torts Claims Act, 28 U.S.C. §§ 1346(b), 2671, et seq., which mandates that the United States be a named plaintiff, and that the plaintiff exhaust its administrative remedies. Because the plaintiff has failed to meet these requirements, the FDIC argues, the court must dismiss the action for lack of subject matter jurisdiction.

We do not agree that the instant action sounds in tort. Rather, we find that the suit was clearly brought as a garnishment action. The papers filed with the removed petition include: Garnishment Affidavit, Garnishee Summons, Garnishee's

## DISCUSSION

### A. *Whether the Present Action is Barred by FIRREA*

■ The district court held that Four–O–One could not bring a garnishment action because the FDIC had not consented as is required under 12 U.S.C. §§ 1825(b)(2) and 1823(d)(3)(A). Title 12 U.S.C. § 1825(b)(2) states that:

> When acting as a receiver, the following provision shall apply with respect to the [Federal Deposit Insurance] Corporation: ... (2) [n]o property of the Corporation shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the Corporation, nor shall any involuntary lien attach to the property of the Corporation.

12 U.S.C. § 1823(d)(3)(A) extends the rights, powers, privileges, and authorities enumerated in sections 1821 and 1825(b), that the FDIC holds when acting as a receiver, to the FDIC when it is acting in its corporate capacity.

> With respect to any asset acquired or liability assumed pursuant to this section, the Corporation shall have all of the rights, powers, privileges, and authorities of the Corporation as receiver under sections 1821 and 1825(b) of this title.

12 U.S.C. § 1823(d)(3)(A). Thus, the effect of 12 U.S.C. § 1823(d)(3)(A) is simply to cause § 1825(b)(2) to be applicable to the FDIC in both its capacity as receiver and its corporate capacity.

Although not raised by the parties or the court below, 12 U.S.C. § 1821(d)(13)(C) would also appear to place a limitation on the power of this court to grant relief in this case. According to that provision, "[n]o attachment or execution may issue by any court upon assets in the possession of the receiver." 12 U.S.C. § 1821(d)(13)(C).

The mortgage agreements, containing the assignment of production clauses, passed to the FDIC in receivership upon the bank's failure. Later, the agreements were assigned to the FDIC in its corporate capacity. Whether the FDIC was acting in its capacity as receiver or its corporate capacity, 12 U.S.C. §§ 1821(d)(13)(C), 1823(d)(3)(A), and 1825(b)(2) prohibit this court from attaching, executing, garnishing, foreclosing, selling, or levying the proceeds from the production of oil and gas.

The appellant, arguing that section 1825(b)(2) is inapplicable, contends that the proceeds of production are not the "property of the corporation" because Four–O–One holds a superior security interest in such proceeds. However, even if Four–O–One does hold a security interest in the proceeds, that does not preclude the proceeds from being considered the "property of the corporation" under 12 U.S.C. § 1825(b)(2). As of the time that the garnishment action was filed, Four–O–One's interest in the proceeds was merely that of a secured party. The proceeds had been paid by the purchaser of the production to the FDIC pursuant to the mortgage provisions entitling the FDIC to such proceeds. The FDIC had lawful possession of the proceeds pursuant to a claim of title. Therefore, notwithstanding the possibility that the proceeds might be encumbered with a superior lien, for purposes of 12 U.S.C. § 1825(b)(2), the proceeds may prop-

---

Answer, Election to Take Issue Answer of Garnishee. The garnishment remedy is codified in the civil procedure title of the Oklahoma Code and is in the nature of a civil enforcement proceeding rather than a tort action. Section 1171 of Title 12 of the Oklahoma Code states:

> Any creditor shall be entitled to proceed by garnishment in any court of record having civil jurisdiction in the proper county against any person who shall be indebted to, or have any property, in his possession, or under his control belonging to such creditor's debtor, in the cases, upon the conditions, and in the manner hereinafter described.

Okla.Stat.Ann. tit. 12, § 1171 (West 1988 & Supp.1993).

The FDIC relies heavily on the case of *Farha v. FDIC*, 963 F.2d 283 (10th Cir.1992), to support its characterization of the case as a claim in tort. *Farha* is distinguishable on the facts. In that case the plaintiff brought an action in replevin (tort) and contract to recover two certificates of deposit. *Id.* at 285. The court held that the tort action was barred by the plaintiff's failure to comply with the FTCA. *Id.* at 288–89. The *Farha* court's analysis rests on the fact that the case was brought in replevin, in the nature of a conversion action, which sounded in tort. *See id.* at 288. A garnishment action differs because it is not founded in tort and it is not necessary to prove fault on behalf of the defendant.

erly be viewed as the property of the FDIC as of the filing of the garnishment action.

Our conclusion that this non-consensual garnishment action against the FDIC is barred is also supported by section 1821(d)(13)(C), which prohibits execution upon "assets in the possession" of the FDIC. The proceeds from the oil and gas production are clearly in the FDIC's possession. This garnishment action is merely an "ancillary remedy in aid of execution to obtain payment of a judgment." Black's Law Dictionary 680 (6th ed. 1990); see Okla.Stat.Ann. tit. 12, § 841 et seq. (West 1988 & Supp.1993). As such it is also barred by 12 U.S.C. § 1821(d)(13)(C).

The appellant argues that the FDIC should not be allowed to use FIRREA as a shield when their lien on the proceeds of production attached, and the FDIC received the proceeds in question, before FIRREA went into effect. The lien against Ok-Tex was filed in early 1984. Sutherland filed suit on September 5, 1984, to foreclose on these liens in state court. The proceeds from the oil and gas in question were paid to the FDIC between May and December of 1985. However, the relevant provisions of FIRREA were not enacted into law until August 9, 1989.

We disagree with the appellant's retroactivity arguments. The statutory provisions in question serve as a ban on certain remedial actions. That is, courts are not allowed to attach, garnish, foreclose, sell, or place a levy on the assets of the FDIC nor to issue any attachment or execution on assets in the possession of the FDIC. Those limitations do not depend upon when the FDIC's interest came into being but rather upon when the prohibited kinds of relief are sought. The present garnishment action was filed on October 5, 1990, over one year after the relevant provisions of FIRREA went into effect. Accordingly, we find that there is no retroactivity problem in this case.

Contrary to the appellant's arguments, Irving Indep. Sch. Dist. v. Packard Properties, 762 F.Supp. 699 (N.D.Tex.1991), aff'd,

970 F.2d 58 (5th Cir.1992), is not inconsistent with our holding. In that case, the court was concerned with that provision of 12 U.S.C. § 1825(b)(2), which governs the attachment of involuntary liens. The court held that a tax lien attached to property held by the FDIC on January 1, 1989, the date on which the tax was assessed. Because the statutory exclusion against involuntary liens did not take effect until after January 1, 1989, it did not preclude the lien from attaching. Id. at 704. However, the court in Irving ultimately concluded that, although the plaintiffs had a valid lien against the property in question, they "[had] no right to foreclose upon the Property while it remain[ed] in FDIC receivership." Id. at 705.

Although the instant case construes a different portion of the same subsection—that dealing with the prohibition on garnishment—our holding is consistent with Irving. Even assuming that Four–O–One held a valid lien on the proceeds of production, the appellant's attempts to garnish the proceeds of production, while they are held by the FDIC, are barred by FIRREA. See Midlantic Nat'l Bank/North v. Federal Reserve Bank, 814 F.Supp. 1195, 1197 (S.D.N.Y.1993); Glenborough New Mexico Assocs. v. RTC, 802 F.Supp. 387, 393 (D.N.M.1992).[4]

## B. Whether the District Court Abused its Discretion

This action was removed to the U.S. District Court for the Western District of Oklahoma on October 24, 1990. By June 3, 1991 both parties had set forth motions for summary judgment and fully briefed the issues contained therein. However, the FDIC moved, on June 25, 1991, to: 1) file supplemental answers to plaintiff's interrogatories and requests for admissions; 2) strike its responses to discovery; 3) strike its first motion and brief in support of summary judgment; and 4) file a new motion for summary judgment and brief in support.

The district court noted the "fundamental" unfairness of the changes and the "sloppi-

---

4. We express no view on the validity of Four–O–One's lien or on other remedies that might be

available to Four–O–One.

ness" of the FDIC in presenting "false" positions. However, the court concluded that the case should be tried on the actual state of the facts, noting that the FDIC could be made to answer for its carelessness at a later time. The court allowed the FDIC to supplement its discovery responses and to file new papers regarding summary judgment, but it denied the request to strike its previous pleadings. The appellant argues that the district court erred in allowing the amendments and supplements because the FDIC argued new legal theories and asserted new facts and circumstances.

■ Discovery rulings and rulings regarding amendments to motions are reviewed for an abuse of discretion. *Willner v. Budig,* 848 F.2d 1032, 1035–36 (10th Cir.1988) (discovery rulings), *cert. denied,* 488 U.S. 1031, 109 S.Ct. 840, 102 L.Ed.2d 972 (1989); *Federal Ins. Co. v. Gates Learjet Corp.,* 823 F.2d 383, 387 (10th Cir.1987) (amendment of pleadings). We are unable to find that the district court abused its discretion in this case. First, the trial court set forth a legitimate reason for allowing the amendment— that is so that the case would be decided on the actual state of the facts. This reason comports with Fed.R.Civ.P. 15(a) which provides that leave to amend "shall be freely given when justice so requires." The FDIC's motive in seeking leave to amend was to change pleadings that were based on an incorrect perception that it acted in the capacity solely as a receiver and not as a corporation. Although a new ground for summary judgment was set forth in the supplemental pleadings, it was not clear the appellant was prejudiced. Furthermore, the court did not allow the FDIC to withdraw its original pleadings. Rather, they were to remain in the record and accordingly could be considered by the court.

The cases cited by the appellant do not support the claim that the court below abused its discretion. The cases involve situations where the trial court *denied* motions to amend. *See Local 472 v. Georgia Power*

Co., 684 F.2d 721, 724–25 (11th Cir.1982); *Addington v. Farmer's Elevator Mut. Ins. Co.,* 650 F.2d 663, 666 (5th Cir. Unit A July 1981), *cert. denied,* 454 U.S. 1098, 102 S.Ct. 672, 70 L.Ed.2d 640 (1981). The appellant would have us believe that because the cases are factually similar to the instant case, the trial court below should similarly have denied the FDIC's motion to amend. However, the appellant's reliance on the these cases is misplaced. The cases ultimately stand for the proposition that the trial court has wide discretion to grant or deny a motion to amend.

## CONCLUSION

Under 12 U.S.C. § 1825(b)(2), the appellants are barred from garnishing the property held by the FDIC.[5] Further, 12 U.S.C. § 1821(d)(13)(C) bars any attachment or execution on property in the FDIC's possession. Accordingly, the order of the district court is AFFIRMED.

---

5. At one point in their submissions to this court, the appellants note as an aside that they have been deprived of their property without due process or just compensation. Aplt. Opening Br. at

22. We express no opinion on this claim, finding that this action was brought as a state law garnishment action. We decline to entertain the constitutional issues for the first time on appeal.