47 F.3d 1178
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 FEDERAL DEPOSIT INSURANCE CORPORATION, Liquidating
Agent/Receiver of Malden Trust Company, Plaintiff-Appellee,
v.
Richard CHAVES, B & C PARTNERSHIP, Mark A. Battaglia,
Defendants-Appellants,
and
Board of County Commissioners of Bernalillo County, New
Mexico; New Mexico Treasurer, Bernalillo County;
New Mexico Assessor, Bernalillo County;
Charles Hill, Defendants,
State of New Mexico, Department of Taxation and Revenue,
Property Tax Division; City of Albuquerque,
Defendants-Appellees,
and
Lewinger-Hamilton, Inc., Receiver and successor to
Parnegg-Miller Management, Inc., Receiver.
Mark A. BATTAGLIA, doing business as B & C Partnership,
Plaintiff-Appellant,
v.
Charles HILL, Defendant-Appellee,
and
Federal Deposit Insurance Corporation, as Receiver for
Malden Trust Company, Intervenor-Defendant-Appellee.
 No. 93-2285.
 United States Court of Appeals, Tenth Circuit.
 Feb. 13, 1995.
 
 Before ANDERSON, BALDOCK, and BRORBY, Circuit Judges.
 ORDER AND JUDGMENT*
 STEPHEN H. ANDERSON, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed.R.App.P. 34(f) and 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 This appeal arises out of two actions that were consolidated by the district court. Malden Trust Company (Malden) was the holder of a note executed by Charles Hill, secured by a piece of property owned by Hill and identified as the Old Albuquerque High School. Mark Battaglia, doing business as B & C Partnership, sought to purchase the property and entered into a purchase agreement with Hill on November 28, 1988. Pursuant to that agreement, Battaglia placed a $50,000 letter of credit in escrow as earnest money toward the purchase price of $1,400,000. Several days before the scheduled closing date, Battaglia informed Hill that it had come to his attention that the property had an asbestos problem, of which he believed Hill was aware and had failed to disclose. Battaglia considered the failure to disclose a breach of the purchase agreement but indicated that he was prepared to proceed to closing, provided that Hill fix the asbestos problem. No resolution of how the asbestos problem was to be handled was reached, the closing date came and went, and Hill converted the $50,000 letter of credit upon Battaglia's failure to close, pursuant to the purchase agreement.
 
 
 3
 Battaglia, doing business as B & C Partnership, filed an action in New Mexico state court against Hill alleging various wrongdoings by Hill in connection with his failure to disclose his knowledge of the asbestos problem and requesting specific performance and damages in the amount necessary to cure the asbestos problem. Shortly after the suit was filed, Battaglia filed a notice of lis pendens referencing the lawsuit and describing the property. He filed a second notice of lis pendens on March 16, 1990, again referencing the lawsuit and describing the property.
 
 
 4
 On November 27, 1989, Hill received additional funds from Malden, executing a second promissory note and increasing his indebtedness to $2,500,000. Thereafter, Hill defaulted on the note, and Malden filed suit to recover on the note and to foreclose the mortgage on the property, joining Battaglia, B & C Partnership, and Richard Chaves (appellants) as defendants. After the foreclosure suit was filed, the FDIC was appointed liquidating agent/receiver of Malden. The FDIC moved to intervene in the suit filed by Battaglia against Hill; the state court granted intervention. The FDIC then removed both actions to federal court, where the two suits were consolidated.
 
 
 5
 The FDIC moved for summary judgment, and the district court granted the motion; the court entered a judgment of foreclosure, expunged the notices of lis pendens, and disallowed appellants' claim for specific performance. The district court certified its judgment pursuant to Fed.R.Civ.P. 54(b), allowing appellants to appeal while the misrepresentation claims remain before the district court.
 
 
 6
 We review de novo the district court's grant of summary judgment, applying the same standard as the district court. Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir.), cert. denied, 113 S.Ct. 635 (1992). Federal R.Civ.P. 56(c) dictates the standard for summary judgment: "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and [ ] the moving party is entitled to a judgment as a matter of law." "In applying this standard, we construe the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." Blue Circle Cement, Inc. v. Board of County Comm'rs, 27 F.3d 1499, 1503 (10th Cir.1994).
 
 
 7
 The burden is on the moving party to show its entitlement to summary judgment, Baker v. Board of Regents, 991 F.2d 628, 630 (10th Cir.1993), and, once that showing is made, the burden shifts to the nonmoving party to "come forward with 'specific facts showing that there is a genuine issue for trial,' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Rule 56(e)). The issue of fact must be genuine; the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586.
 
 
 8
 Appellants argue that the FDIC should not be allowed to foreclose the mortgage because the second note executed by Hill was not secured by the property since the second note made no reference to either the first note or the mortgage. They maintain that the second note was an entirely separate transaction, that the proceeds from the second note were used to pay off the first note, and, consequently, that the mortgage on the property was released. They offer no proof, however, supporting these contentions, they merely hypothesize about possible scenarios. In fact, the parties to the note, Hill and the FDIC (as successor to Malden), agree as to the existence and priority of the FDIC's mortgage. Hill stipulated to the FDIC's motion for summary judgment in the foreclosure action; the parties to the note agree that the second note was a modification of the first note and that the property remained security for Hill's indebtedness. We agree with the district court that appellants have failed to raise a genuine issue of material fact and that summary judgment on the FDIC's foreclosure action was appropriate.[1]
 
 
 9
 We also agree with the district court that release of the notices of lis pendens was appropriate. 12 U.S.C. Sec. 1821(d)(13)(C) prohibits attachment or execution by any court upon assets in the FDIC's possession. Section 1825(b)(2) of that title prohibits the attachment of any involuntary lien to property of the FDIC as receiver. The New Mexico Supreme Court has analogized the filing of a lis pendens to the levy of an attachment writ, see Ruiz v. Varan, 797 P.2d 267, 269 (N.M.1990) (analyzing nature of lis pendens for purposes of measuring damages for abuse of process), and, although a notice of lis pendens is not effective in itself to create a lien, Title Guar. & Ins. Co. v. Campbell, 742 P.2d 8, 13 (N.M.Ct.App.1987), it certainly clouds the title of the property. The lis pendens notices were, therefore, statutorily prohibited as to property held by the FDIC. Cf. GWN Petroleum Corp. v. Ok-Tex Oil & Gas, Inc., 998 F.2d 853, 856-57 (10th Cir.1993) (holding that garnishment action against proceeds held by FDIC prohibited by Secs. 1825(b)(2) and 1821(d)(13)(C)).
 
 
 10
 In addition, the district court's expungement of the lis pendens notices was correct under state law. New Mexico courts have held that "[t]he filing of a notice of lis pendens is authorized only in actions 'affecting the title to real estate in this state.' " RTC v. Binford, 844 P.2d 810, 817 (N.M.1992) (quoting N.M.Stat.Ann. Sec. 38-1-14 (1987 Repl.Pamp.)). When the district court properly granted summary judgment in favor of the FDIC on all claims involving the property, allowing foreclosure of the mortgage on the property and denying appellants' claims for specific performance, the action no longer affected title to real estate, and dissolution of the lis pendens was proper.[2]
 
 
 11
 The judgment of the United States District Court for the District of New Mexico is AFFIRMED.
 
 
 
 *
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [1]
 Appellants argue that the mortgage is invalid because it was not executed by Hill's wife and that in New Mexico, a community property state, a mortgage executed by only one spouse is invalid. Appellants did not present this argument to the district court, and we will not consider it for the first time on appeal. See Walker v. Mather (In re Walker), 959 F.2d 894, 896 (10th Cir.1992)
 
 
 [2]
 Because we hold that the lis pendens notices should be released both under federal statutory and state authority, we do not address appellants' argument that the D'Oench Duhme doctrine, which has its origin in D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447 (1942), and is now codified at 12 U.S.C. Sec. 1823(e), is inapplicable